Stuart C. Plunkett (State Bar No. 187971)
Ariel D. House (State Bar No. 280477)
BAKER BOTTS LLP
101 California Street, Suite 3070
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

Paul R. Morico (*pro hac vice* pending)
BAKER BOTTS LLP
One Shell Plaza
901 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California corporation,, <br><br>     Plaintiff, <br><br>   v. <br><br> ROGER JINTEH ARRIGO CHEN, an individual; GENIA TECHNOLOGIES, INC., a Delaware corporation; and DOES 1-25, <br><br>     Defendants. | Case No. _____ <br><br> **COMPLAINT** <br>  **1. Correction of Inventorship Under 35 U.S.C. § 256;** <br>  **2. Declaration of Patent Ownership;** <br>  **3. Breach of Contract;** <br>  **4. Breach of the Implied Covenant of Good Faith and Fair Dealing;** <br>  **5. Conversion; and** <br>  **6. Constructive Trust** <br><br> **DEMAND FOR JURY TRIAL** |

The Regents of the University of California (the "University" or "Plaintiff") allege as follows:

## INTRODUCTION

1.     Plaintiff seeks redress for the unlawful actions of a former University of California, Santa Cruz ("UCSC") research employee who violated his contractual Oath by failing to assign his inventions to the University and failing to disclose other patentable inventions.  Rather, after leaving UCSC, he started his own company to commercialize the very technology he and others invented while at UCSC.  That company, founded on technology rightfully owned by the University, later sold for at least $125 million.

2.     Defendant Roger Jinteh Arrigo Chen ("Chen") worked as a researcher in the biophysics laboratory at UCSC from approximately October 2005 until January 2008.  While at UCSC, Chen (with other co-inventors) conceived of and developed a series of inventions and proprietary technologies relating to the array of individually addressable nanopores, which are used in characterizing a nucleic acid sequence of each of a plurality of nucleic acid molecules (the "UCSC Inventions").  Pursuant to the University of California's State Oath of Allegiance, Patent Policy, and Patent Acknowledgement (the "Oath"), which Chen signed, Chen was obligated (i) to "assign inventions and patents" that he conceived or developed during the time he was employed by the University or utilizing the University's research facilities, resources, or funds, and (ii) to "promptly report and fully disclose the conception and/or reduction to practice of potentially patentable inventions" to the University so that the University could "determine [its] rights and equities therein."  Under the Oath, Chen also agreed to "execute any documents and do all things necessary . . . to assign to [the] University all rights, title, and interest therein and to assist [the] University in securing patent or analogous protection thereon."

3.     Relying on the Oath—which is made by thousands of University researchers

1

across California—the University has filed a number of patent applications (the "University Patent Applications") based on the UCSC Inventions with the United States Patent and Trademark Office ("USPTO"), each of which identifies Chen as an inventor.  Chen has evaded all requests by the University to fulfill his obligations under the Oath to execute assignments and declarations regarding the University Patent Applications.

4.      Rather than comply with his Oath, Chen co-founded Genia Technologies, Inc. ("Genia") to profit using the technology he and others developed at UCSC.  Genia describes itself as a "nanopore based sequencing company," and its business model is *directly* based on the UCSC Inventions.

5.      Chen also violated his Oath by seeking patent protection for inventions conceived at the University and assigning those patent rights to Genia.  Genia now holds a number of patents (and pending patent applications) derived from the UCSC Inventions that identify Chen as one of only two co-inventors (the "Genia Patents").  Chen never disclosed the filing of any of the Genia Patents to the University.  The subject matter of the Genia Patents, and the claims and inventions disclosed therein, were conceived of and developed by Chen during his employment with the University, and thus Chen was obligated under the Oath to disclose those inventions to the University so the University could seek appropriate patent protections.

6.      Upon information and belief, Chen was generously compensated for disclosing the highly valuable UCSC Inventions to Genia.  The Genia Patents, and the underlying UCSC Inventions from which they are derived, rightfully belong to the University.

7.      Genia was recently acquired by one of the largest health care companies in the world for more than $125 million.  A significant portion of the acquisition payment to acquire Genia is attributable to the Genia Patents, which are one of Genia's most valuable

assets. That money should have been paid to the University, the true owner of the Genia Patents. Those funds should be disgorged from Genia and returned to the University. Additionally, upon information and belief, Chen received a significant portion of the acquisition payment, which should also be disgorged from Chen and returned to the University.

## JURISDICTION AND VENUE

8.      The University alleges certain claims arising under the Patent Laws of the United States, Title 35 of the United States Code. This Court has original and exclusive jurisdiction over certain claims alleged herein pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201, and 35 U.S.C. § 256. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## INTRADISTRICT ASSIGNMENT

10.     Under Civil Local Rule 3-2(c), this Intellectual Property Action should be assigned on a district-wide basis.

## THE PARTIES

11.     Plaintiff The Regents of the University of California is a California corporation with statewide administrative offices located at 1111 Franklin Street, Oakland, California, 94607-5200. The University is the governing board chartered by Article 9, Section 9, of the California Constitution to administer and control the University of California system, including the University of California, Santa Cruz ("UCSC"). UCSC is a public research university located in Santa Cruz County, California. The University has been granted the authority to bring lawsuits on behalf of UCSC.

12.     On information and belief, Defendant Roger Jinteh Arrigo Chen is an individual who resides in Santa Clara County, California.

13.     On information and belief, Defendant Genia Technologies, Inc., is a Delaware corporation with its principal place of business in Santa Clara, California.

## FACTUAL BACKGROUND

### I.     The Oath.

14.     After obtaining a B.S. degree in Electrical Engineering from the Massachusetts Institute of Technology in 1991, Chen worked for ten years as an engineer at Maxim Integrated Products, a multi-billion dollar technology company located in San Jose, California.

15.     From October 2005 until January 2008, Chen attended graduate school at UCSC.  Chen was originally enrolled in the Ph.D. program, but pursued a Master's degree instead.  Chen obtained an M.S. degree in Biochemistry in January 2008.

16.     While at UCSC, Chen was employed as a researcher in the biophysics laboratory (the "UCSC Laboratory") of world-renowned DNA nanopore sequence scientist Mark Akeson ("Akeson").  As a condition of his employment in the UCSC Laboratory, Chen was required to sign the University of California's State Oath of Allegiance, Patent Policy, and Patent Acknowledgment.  The Oath includes the following provisions:

**Patent Acknowledgment.**

This acknowledgment is made by me to The Regents of the University of California, a corporation, hereinafter called "University," in part consideration of my employment, and of wages and/or salary to be paid to me during any period of my employment, by University, and/or my utilization of University research facilities and/or my receipt of gift, grant, or contract research funds through the University.

By execution of this acknowledgment, I understand that I am not waiving any **rights to a percentage of royalty payments received by University**, as set forth in the University of California Patent Policy, hereinafter called "Policy."

I also understand and acknowledge that the University has the right to change the Policy from time to time, including the percentage of net royalties paid to inventors, and that the policy in effect *at* the time an invention is disclosed shall govern the University's disposition of royalties, if any, from that Invention.  Further, I acknowledge that the percentage of net royalties paid to Inventors is derived only from consideration in the form of money *or* equity received under: 1) a license or bailment agreement for licensed rights, or 2) an option or letter agreement leading to a license or bailment agreement.  I also acknowledge that the percent-age of net royalties paid to inventors is not derived from research funds or from any other consideration of any kind received by the University.  The Policy on Accepting Equity When Licensing University Technology governs the treatment of equity received in consideration for a license.

**I acknowledge my <u>obligation to assign inventions and patents</u> that I conceive or develop while employed by University or during the course of my utilization of any University research facilities or any connection with my use of gift, grant, or contract research funds received through the University.  I further acknowledge <u>my obligation to promptly report and fully disclose the conception and/or reduction to practice of potentially patentable inventions</u>** to the Office of Technology Transfer or authorized Licensing office. **Such Inventions shall be examined by University to determine rights and equities therein in accordance with the Policy**.  I shall promptly furnish University with complete information with respect to each.

**In the event any such invention shall be deemed by University to be patentable or protectable** by an analogous property right, and **University desires**, **pursuant to determination by University as to its rights and equities therein, to seek patent *or* analogous protection thereon, <u>I shall execute any documents and do all things necessary</u>**, at University's **expense, <u>to assign to University all rights, title, and interest therein and to assist University in securing patent or analogous protection thereon</u>**. The scope of this provision is limited by California Labor Code section 2870, to which notice is given below. In the event I protest the University's determination regarding any rights or interest in an invention, I acknowledge my obligation: (a) to proceed with any University requested assignment or assistance; (b) to give University notice of that protest no later than the execution date of any of the above-described documents or assignment; and (c) to reimburse University for all expenses and costs it encounters in its patent application attempts, if any such protest is subsequently sustained or agreed to.

I acknowledge that I am bound to do all things necessary to enable University to perform its obligations to grantors of funds for research or contracting agencies as said obligations have been undertaken by University.

University may relinquish to me all or a part of its right to any such invention, if, in its judgment, the criteria set forth in the Policy have been met.

5

I acknowledge that I am bound during any periods of employment by University or for any period during which I conceive or develop any invention during the course of my utilization of any University research facilities, or any gift, grant, or contract research funds received through the University.

In signing this agreement I understand that the law, of which notification is given below, applies to me, and that **I am still required to disclose all my inventions to the University.**

17.     In summary, the Oath provides that:

    a.     Chen has an "obligation to assign inventions and patents" that he conceived or developed during the time he was employed by the University or utilizing the University's research facilities, resources, or funds;

    b.     Chen has an "obligation to promptly report and fully disclose the conception and/or reduction to practice of potentially patentable inventions" to the University so that the University could "determine [its] rights and equities therein";

    c.     If the University determined any such invention was patentable, the Oath further requires Chen to "execute any documents and do all things necessary . . . to assign to [the University] all rights, title, and interest therein and to assist [the University] in securing patent or analogous protection thereon"; and

    d.     The University would provide Chen with a percentage of any royalty payments that the University obtained based on licensing Chen's patented inventions.

18.     Chen executed the Oath on September 15, 2005, a true and correct copy of which is attached hereto as **Exhibit A.**

**II.     Chen's Scientific Inventions During His Employment with the University.**

19.     Chen's research at UCSC was in the field of nanopore sequencing.  Nanopore sequencing refers to a method of "sequencing" DNA, which is the process for determining the precise order of nucleotides within a DNA molecule.  A nanopore is a very small hole with an internal diameter on the order of one nanometer (one billionth of a meter).  The

6

theory behind nanopore sequencing is that when a nanopore is immersed in a conducting fluid and a potential voltage is applied across it, an electric current due to conduction of ions through the nanopore can be observed, and the magnitude of the current may indicate when strands of DNA or other molecules pass through or near the nanopore.

20.     While Chen was employed as a researcher in the UCSC  Laboratory, Chen (along with other University co-inventors) developed a series of related inventions and proprietary technologies relating to the array of individually addressable nanopores, which are used in characterizing a nucleic acid sequence of each of a plurality of nucleic acid molecules (the "UCSC Inventions").

21.     The UCSC Inventions were memorialized in a series of Disclosure and Record of Inventions, which identify Chen as either the sole inventor or a co-inventor.

22.     For example, Chen is listed as the sole inventor on a Disclosure and Record of Invention for an invention described as "Method for Manufacture of Very Large Scale Arrays of Independently Addressable Nanopores" ("Chen ROI No. 1").

23.     The Invention Chronology identifies a conception date of April 13, 2006, and a date of first written record of invention of April 2, 2007.  The invention recorded in the Chen ROI No. 1 describes a number of inventive concepts, including by not limited to, the idea of manufacturing arrays of biological nanopores that can operate independently of each other, in a very large scale approach similar to the manufacturing methods of integrated circuits.  This idea was first raised during discussions between Akeson and Chen at the UCSC and was first documented in a laboratory notebook.  The Chen ROI No. 1 expressly indicated that the invention was detailed in a "lab notebook," and an "[e]mail to Mark Akeson with PDF and TIF (sic) files of hand drawn diagrams."  Akeson witnessed Chen ROI No. 1 on April 11, 2007.

24.     Notably, Figures 1-3 of the Chen ROI No. 1 are essentially *identical* to

7

Figures 9A-C, 10 and 11 of University's U.S. Application Serial No. 12/080,684, which is described in further detail below.

25.    Chen is also identified as a co-inventor, along with Akeson, on a Disclosure and Record of Invention for an invention described as "Methods to Limit Enzyme Activity to One Molecule or Complex Using a Nanopore."   The Invention Chronology identifies a conception date of January 17, 2007, and a date of first written record of invention on the same date ("Chen ROI No. 2").

26.    Additionally, Chen is identified as a co-inventor on another disclosure for an invention described as "Nanopore-Coupled Sequencing by Synthesis."  This disclosure was submitted to the University's patent prosecution manager on May 18, 2007 ("May 18, 2007 Invention Disclosure").

27.    In addition to the foregoing inventions, Chen made other contributions to the field of nanopore sequencing during his time at UCSC.  For example, Chen co-authored a paper entitled, "*Sequence-specific detection of individual DNA polymerase complexes on real time using a nanopore*," Nat. Nanotechnol. 2(11): 718-724 (Nov. 2007).

III.    <u>The University Seeks Patent Protection for the UCSC Inventions.</u>

28.    Pursuant to its rights under the Oath, the University sought patent protection for the UCSC Inventions memorialized in the Chen ROI No. 1, the Chen ROI No. 2, and the May 18, 2007 Invention Disclosure, by filing a series of related patent applications, which are identified in the chart below.  Each of the University's patent applications listed below is based on the UCSC Inventions and identifies Chen as an inventor.

| Active University Patent Applications | | | |
|---|---|---|---|
| **Filing Date** | **U.S. Provisional Patent Application Serial No.** | **Description of Invention** | **Inventors** |

| October 17, 2013[1] | 14/056,636 | "Compositions, devices, systems, and methods for using a nanopore" | Mark A. Akeson, David W. Deamer, William B. Dunbar, Roger Jinteh Arrigo Chen, and Noah A. Wilson |
| June 10, 2014[2] | 14/300,453 | "Compositions, devices, systems, and methods for using a nanopore" | Mark A. Akeson, David W. Deamer, William B. Dunbar, Roger Jinteh Arrigo Chen, and Noah A. Wilson |
| October 21, 2015[3] | 14/919,315 | "Compositions, devices, systems, and methods for using a nanopore" | Mark A. Akeson, David W. Deamer, William B. Dunbar, Roger Jinteh Arrigo Chen, and Noah A. Wilson |
| March 31, 2016[4] | 15/087,734 | "Compositions, devices, systems, and methods for using a nanopore" | Mark A. Akeson, David W. Deamer, William B. Dunbar, Roger Jinteh Arrigo Chen, and Noah A. |

---

1       U.S. Application Serial No. 14/056,636 is a continuation application of U.S. Application Serial No. 13/615,183, filed on September 13, 2012, which is a continuation application of U.S. Application Serial No. 12/080,684 filed on April 4, 2008, which claims priority from U.S. Provisional Application Serial. No. 60/921,787, Serial No. 60/931,115, Serial No. 60/962,530, Serial No. 60/967,539 and Serial No. 61/062,391.

2       U.S. Application Serial No. 14/300,453 is a continuation application of U.S. Application Serial No. 14/056,636 filed on October 17, 2013, which is a continuation application of U.S. Application Serial No. 13/615,183 filed on September 13, 2012, which is a continuation application of U.S. Application Serial No. 12/080,684 filed on April 4, 2008, which claims priority from U.S. Provisional Application Serial No. 60/921,787, Serial No. 60/931,115, Serial No. 60/962,530, Serial No. 60/967,539, and Serial No. 61/062,391.

3       U.S. Application Serial No. 14/919,315 is a continuation application of U.S. Application Serial No. 14/300,453 filed June 10, 2014, which is a continuation application of U.S. Application Serial No. 14/056,636 filed October 17, 2013, which is a continuation application of U.S. Application Serial No. 13/615,183 filed September 13, 2012, which is a continuation application of U.S. Application Serial No. 12/080,684 filed April 4, 2008, which claims priority from U.S. Provisional Application Serial No. 60/921,787, Serial No. 60/931,115, Serial No. 60/962,530, Serial No. 60/967,539, and Serial No. 61/062,391.

4       U.S. Application Serial No. 15/087,734 is a continuation application of U.S. Application Serial No. 14/919,315, filed October 21, 2015, which is a continuation application of U.S. Application Serial No. 14/300,453 filed June 10, 2014, which is a continuation application of U.S. Application Serial No. 14/056,636 filed October 17, 2013, which is a continuation application of U.S. Application Serial No. 13/615,183 filed September 13, 2012, which is a continuation application of U.S. Application Serial No. 12/080,684 filed April 8, 2008, which claims priority from U.S. Provisional Application Serial No. 60/921,787, Serial No. 60/931,115, Serial No. 60/962,530, Serial No. 60/967,539, and Serial No. 61/062,391.

| Filing Date | U.S. Provisional Patent Application Serial No. | Description of Invention | Inventors |
|---|---|---|---|
| | | | Wilson |
| May 23, 2016[5] | 15/162,225 | "Compositions, devices, systems, and methods for using a nanopore" | Mark A. Akeson, David W. Deamer, Roger Jinteh Arrigo Chen |

| **Abandoned University Patent Applications** | | | |
|---|---|---|---|
| **Filing Date** | **U.S. Provisional Patent Application Serial No.** | **Description of Invention** | **Inventors** |
| April 4, 2007 | 60/921,787 | "Methods to limit enzyme activity to one molecule or complex using a nanopore" | Mark A. Akeson, Seiko Benner, Roger Jinteh Arrigo Chen, |
| May 21, 2007 | 60/931,115 | "Methods for sequencing polynucleotides by synthesis using a nanopore" | Robin Abu-Shumays, Mark A. Akeson, Seiko Benner, Roger Jinteh Arrigo Chen, David W. Deamer |
| September 4, 2007 | 60/967,539 | "Method for manufacture of very large scale arrays of independently addressable nanopores and methods for their use" | Roger Jinteh Arrigo Chen |
| April 4, 2008[6] | 12/080,684 | "Compositions, devices, systems, and methods for using a nanopore" | Mark A. Akeson, David W. Deamer, Roger Jinteh Arrigo Chen, Seiko Benner, William B. Dunbar, Noah W. Wilson, Kate Lieberman, Robin Abu-Shumays, and Nicholas Hurt |

---

5      U.S. Application Serial No. 15/162,225 is continuation application of U.S. Application Serial No. 15/087,734, filed March 31, 2016, which is a continuation application of U.S. Application Serial No. 14/919,315, filed October 21, 2015, which is a continuation application of U.S. Application Serial No. 14/300,453 filed June 10, 2014, which is a continuation application of U.S. Application Serial No. 14/056,636 filed October 17, 2013, which is a continuation application of U.S. Application Ser. No. 13/615,183 filed September 13, 2012, which is a continuation application of U.S. Application Serial No. 12/080,684 filed April 4, 2008, which claims priority from U.S. Provisional Application Serial No. 60/921,787, Serial No. 60/931,115, Serial No. 60/962,530, Serial No. 60/967,539, and Serial No. 61/062,391.

6      U.S. Application Serial No. 12/080,684 claims priority from U.S. Provisional Application Serial No. 60/921,787, Serial No. 60/931,115, Serial No. 60/962,530, Serial No. 60/967,539, and Serial No. 61/062,391.

COMPLAINT

| April 4, 2008[7] | International PCT Application Serial No. PCT/US2008/004467 | "Compositions, devices, systems, and methods of using a nanopore" | Mark A. Akeson, David W. Deamer, Roger Jinteh Arrigo Chen, Seiko Benner, William B. Dunbar, Noah W. Wilson, Kate Lieberman, Robin Abu-Shumays, and Nicholas Hurt, Daniel Branton |

## IV.    The Patent Rules Regarding Disclosure of Inventorship.

29.    A provisional patent application is a U.S. national application filed in the USPTO under 35 U.S.C. §111(b).  It has a pendency period of 12 months after the filing date. The applicant must file a corresponding nonprovisional patent application during the 12-month pendency period of the provisional application in order to benefit from the earlier filing of the provisional application.  Unlike the nonprovisional patent application, the provisional patent application is unique in that it is not required to have a formal patent claim or an Inventor's Oath or Declaration.  Nor is it required to have any claims.

30.    The Rules of Practice in Patent Cases (the "Patent Rules"), 37 C.F.R. § 1.63, require that each inventor or co-inventor of a claimed invention must execute an oath or declaration directed to the patent application, which identifies the inventor and the application to which the oath or declaration is directed, and explains whether the person executing the oath or declaration believes himself or herself to be the original inventor (the "Inventor's Oath or Declaration").

31.    The Patent Rules also provide that in the event the inventor refuses to execute the Inventor's Oath or Declaration, the patent applicant may execute a substitute statement

---

7    International PCT Application Serial No. PCT/US2008/004467 claims priority from U.S. Provisional Application Serial No. 60/921,787, Serial No. 60/931,115, Serial No. 60/962,530, Serial No. 60/967,539, and Serial No. 61/062,391.

COMPLAINT

(the "Substitute Statement") which must:

a. Comply with the requirements of § 1.63(a), identifying the inventor or joint inventor with respect to whom a substitute statement in lieu of an oath or declaration is executed, and stating upon information and belief the facts which such inventor is required to state;

b. Identify the person executing the substitute statement and the relationship of such person to the inventor or joint inventor with respect to whom the substitute statement is executed, and, unless such information is supplied in an application data sheet in accordance with § 1.76, the residence and mailing address of the person signing the substitute statement;

c. Identify the circumstances permitting the person to execute the substitute statement in lieu of an oath or declaration under § 1.63, namely whether the inventor is deceased, is under a legal incapacity, cannot be found or reached after a diligent effort was made, or has refused to execute the oath or declaration under § 1.63; and

d. Unless the following information is supplied in an application data sheet in accordance with § 1.76, also identify:

i. Each inventor by his or her legal name; and

ii. The last known mailing address where the inventor customarily receives mail, and last known residence, if an inventor lives at a location which is different from where the inventor customarily receives mail, for each inventor who is not deceased or under a legal incapacity.

37 C.F.R. § 1.64.

32. Pursuant to 37 C.F.R. § 1.51, a patent application is not complete without the

Inventor's Oath or Declaration or the Substitute Statement, and the failure to include these required documents constitutes grounds for rejection of the patent application.

**V.    The University's Early Efforts to Obtain Patent Protection for the UCSC Inventions.**

33.    The University has pursued many patent applications relating to the UCSC Inventions over the past nine years, including two new applications which were filed just a few months ago.

34.    As early as April 4, 2007, while Chen was still employed at the UCSC Laboratory, the University filed U.S. Provisional Application Serial No. 60/921,787, entitled "Methods to limit enzyme activity to one molecule or complex using a nanopore," which identified Chen, Akeson, and Seiko Benner as inventors.  On May 21, 2007, the University also filed U.S. Provisional Application Serial No. 60/931,115, entitled "Methods for sequencing polynucleotides by synthesis using a nanopore," which identified inventors of Chen, Akeson, Robin Abu-Shumays, Seiko Benner, and David W. Deamer.  Just a few months later, on September 4, 2007, the University filed U.S. Provisional Application Serial No. 60/967,539, entitled "Method for manufacture of very large scale arrays of independently addressable nanopores and methods for their use," which identified Chen as the sole inventor.

35.    Shortly after Chen left UCSC in January 2008, the University filed two additional provisional applications.  On April 4, 2008, the University filed U.S. Application Serial No. 12/080,684, entitled "Compositions, devices, systems, and methods for using a nanopore," by Chen, Akeson, David W. Deamer, Seiko Benner, William B. Dunbar, Noah Wilson, Kate Lieberman, Robin Abu-Shumays, and Nicholas Hurt.  The same day, the University also filed U.S. PCT Application Serial No.: PCT/US2008/004467, entitled "Compositions, devices, systems, and methods for using a nanopore," by the inventors

named in the other April 4, 2008 filing with the addition of Daniel Branton.  On October 2, 2009, the University filed U.S. Application serial No. 12/450,633, entitled "Compositions, devices, systems, and methods for using a nanopore," by Akeson, David W. Deamer, William B. Dunbar, Noah A. Wilson, and Kate Lieberman.

36.     On multiple occasions beginning in early 2009, the University asked Chen to execute a declaration pertaining to the University's U.S. Application Serial No. 12/080,684, and International Patent Application Serial No. PCT/ US2008/004467 (which was assigned Serial No. 12/450,633 when it entered the U.S. National Phase of the International Application).

37.     During the time period of approximately 2009-2010, Chen either failed to respond or was evasive when the University asked him to sign declarations regarding those applications.   On one occasion, in connection with an Abandoned University Patent Application, Chen responded to the University's requests verbally during a telephone conversation with the University's outside counsel, Matthew Kaser, indicating that he would not sign a declaration in connection with that application "at that time."  During this time period, Chen never stated or otherwise indicated that he would not abide by his obligations under the Oath in connection with future applications, including specifically any of the Active University Patent Applications.

38.     The University proceeded with seeking patent protection for the UCSC Inventions.  However, because the University had not successfully obtained a declaration from Chen, several of these patent applications were denied for incompleteness.

39.     The University later learned that during this time, Chen was launching his new company.  Genia was officially founded in March 2009.

## VI.    Chen Evades the University's Requests to Execute Patent Assignments and Declarations Relating to the University Patent Applications.

40.    On October 17, 2013, the University filed U.S. Application Serial No. 14/056,636, entitled "Compositions, devices, systems, and methods for using a nanopore," by Chen, Akeson, David W. Deamer, William B. Dunbar, and Noah Wilson.

41.    On January 14, 2014, the University asked Chen to execute an Inventor's Oath or Declaration as to the recently-filed Patent Application Serial No. 14/056,636.  For the first time, the University also asked Chen to execute Assignments as to the six previously filed University Patent Applications listed above: Serial No. 60/921,787, Serial No. 60/931,115, Serial No. 60/967,539, Serial No. 12/080,684, Serial No. 14/056,636, and Serial No. PCT/US2008/004467.

42.    Chen did not refuse the University's requests.  Instead, approximately one week later, on January 22, 2014, Chen responded to the University's request and asked for a copy of the claims for the then active University Patent Applications.  The University promptly complied with Chen's request and sent him those applications, along with a copy of the declaration and assignment, and an email acknowledging "[t]he cases are all based on your work at UCSC."  When Chen failed to respond, the University sent another letter to Chen on March 4, 2014, repeating its earlier requests.

43.    The University received a letter from Chen, dated March 5, 2014, in which Chen stated:  "I do not believe I contributed to material in the claims in this application.  Thus, I do not believe I am an inventor on this application."  Chen advised the University to review his written materials from his time at the UCSC Laboratory.

44.    The University was unable to locate Chen's written materials, including his laboratory notebooks, from the UCSC Laboratory.  Upon information and belief, Chen failed to return those materials to the University, even though he was required to do so per the

terms of his employment and University policy, which provides that "[n]otebooks and other original records of the research [of University researchers] are the property of the University." A true and correct copy of the University's policy is attached hereto as **Exhibit B.**

45. On June 10, 2014, shortly after learning of the Genia Patents, the University filed U.S. Application Serial No. 14/300,453 (the "'453 Application"). The '453 Application contains claims copied from U.S. Patent No. 8,461,854, assigned to Genia. The true inventors of that claimed subject matter include Mark Akeson, two other University faculty-inventors, David Deamer and William Dunbar, Noah Wilson, another former University researcher, and, on information and belief, Chen. On August 18, 2014, the University requested that Chen clarify whether he would execute inventors' declarations and assignments to Patent Application Serial No. 14/056,636 and Serial No. 14/300,453. The University also requested that Chen provide a copy of his written materials. The University indicated that if Chen failed to respond, they would conclude that he refused to sign, and would file a statement under 35 U.S.C. § 115(d) indicating that Chen had refused to sign the declarations and assignments to the University per his obligation under the Oath.

46. Again, Chen did not refuse the University's requests. Instead, Chen hired the law firm of Wilmer Hale to respond to the University's requests. In September 2015, the University received a letter from Chen's counsel requesting additional information regarding the University's factual and legal basis for believing that Chen was an inventor, and documentation evidencing Chen's obligation to assign patent rights to the University.

47. In the University's written response dated September 30, 2014, the University stated that Chen was an employee of the University at the time the UCSC Inventions were made and that Chen had signed the Oath, signed and transmitted two confidential Records of Invention to the UCSC Technology Transfer Office during his employment, participated in

research projects regarding nanopore sequencing, and co-authored a paper regarding this topic. The University also stated that the relevant provisional patent applications were filed during Chen's employment with UCSC and had identified Chen as an inventor.

48. Chen repeated these evasive tactics over the next several months. Each time the University requested that Chen sign a declaration and assignment, Chen stonewalled by requesting more information and advancing various excuses as to why he had not executed the requested documents. For example, in a February 2016 letter, Chen, through his attorneys, carefully avoided saying that he was refusing to sign the documents required by the Oath, instead contending that he would not sign documents that "falsely purport to name him as an inventor of the subject matter claimed in such applications as of the claimed priority date." He repeated that position, again through his attorneys, in a May 2016 letter.

49. During the same time period that Chen was requesting information from the University and making statements suggesting that he might sign the required documents, he was filing patent applications for Genia that contained the UCSC Inventions. Furthermore, Chen never disclosed to the University that he had filed the Genia Patents.

50. To date, Chen has failed to execute any declarations or assignments relating to the University Patent Applications.

## VII.    Chen Uses the UCSC Inventions to Found a New Company, Genia.

51. As indicated above, while Chen stonewalled the University's efforts to protect its intellectual property, he was simultaneously covertly seeking to patent the same technology he helped invent at the University. Approximately one year after Chen left UCSC, in March 2009, Chen co-founded Genia Technologies, Inc. Chen currently serves on Genia's Management Team as the Chief Technical Officer. According to its website, Genia is "a nanopore based sequencing company."

52. Genia's business model is *directly* based on the UCSC Inventions that Chen

conceived and developed, either individually or jointly, during his time at UCSC.  In fact, a number of patent applications and issued patents assigned to Genia, which identify Chen as one of only two co-inventors, are derived from the UCSC Inventions (the "Genia Patents"). The subject matter of the Genia Patents, and the claims and inventions disclosed therein, were conceived and developed by Chen (and his co-inventors) during his employment with the University.   Specifically, the Genia Patents include claims derived from, and finding support in, the common specification found in UCSC Application Serial No. 14/300,453, Serial No. 14/919,315, and Serial No. 15/087,734, which not only share a common specification but also  claim priority dates earlier than the priority dates of the Genia Patents. Each of the Genia Patents listed below is based on the UCSC Inventions and identifies Chen as one of two co-inventors. At no time did Chen ever disclose any of the Genia Patents to the University.

| Genia's Patent Applications and Issued Patents | | | | | |
|---|---|---|---|---|---|
| **Filing Date** | **U.S. Provisional Patent Application Serial No.** | **Issue Date** | **U.S. Patent No.** | **Description of Invention** | **Inventors** |
| February 8, 2010 | 12/658,604 | December 4, 2012 | 8,324,914 | "Systems and methods for characterizing a molecule" | Roger Jinteh Arrigo Chen, Randy Davis |
| September 15, 2012 | 13/620,973 | June 11, 2013 | 8,461,854 | "Systems and methods for characterizing a molecule" | Roger Jinteh Arrigo Chen, Randy Davis |
| May 13, 2013 | 13/893,142 | May 26, 2015 | 9,041,420 | "Systems and methods for characterizing a molecule" | Roger Jinteh Arrigo Chen, Randy Davis |
| October 14, 2014 | 14/513,642 | June 28, 2016 | 9,377,437 | "Systems and methods for characterizing a molecule" | Roger Jinteh Arrigo Chen, Randy Davis |
| March 24, | 15/079,322 | n/a | n/a | "Systems and | Roger Jinteh |

18

| 2016 | | | | methods for characterizing a molecule" | Arrigo Chen, Randy Davis |
|------|--|--|--|------|------|

53.     Upon information and belief, Chen was generously compensated for disclosing the highly valuable UCSC Inventions to Genia.  As noted above, pursuant to the Oath, the University was required to share a percentage of any royalties derived from the UCSC Inventions with Chen.  Evidently, Chen decided that a share of the royalties was not sufficient.  Instead, Chen stole the UCSC Inventions from the University and sold them to Genia for his exclusive profit.  Chen at all times hid these actions from the University.

54.     Both the Genia Patents and the underlying UCSC Inventions from which they are derived rightfully belong to the University.

**VIII.     Roche Pays More than $125 Million to Acquire Genia.**

55.     Roche is one of the largest health care companies in the world, with annual revenue of approximately $48 billion USD and more than 90,000 employees worldwide.  In June of 2014, Roche agreed to acquire Genia.  According to Roche's press release regarding the acquisition, Roche agreed to pay Genia's shareholders $125 million in cash, plus another $225 million in contingent payments depending on the achievement of certain milestones (the "Acquisition Payment").

56.     Upon information and belief, a significant portion of the Acquisition Payment is attributable to the value of the Genia Patents, which are one of Genia's most valuable assets.  The University anticipates that this amount will be revealed during discovery.  Genia wrongfully received this portion of the Acquisition Payment, which it currently holds in a constructive trust on behalf of the University, and should be disgorged and returned to the true owner, the University.

57.     Upon information and belief, Chen personally received a substantial portion of the Acquisition Payment, primarily due to Chen's critical role as the co-inventor on the

Genia Patents. Chen wrongfully received this portion of the Acquisition Payment, and his share of the Acquisition Payment is also held in a constructive trust on behalf of the University, which should be disgorged and returned to the true owner, the University.

## CLAIMS FOR RELIEF

### First Claim for Relief

### Correction of Inventorship Under 35 U.S.C. § 256

### (Against Chen and Genia)

58.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

59.     Chen has denied his involvement in conceiving and developing contributions to the UCSC Inventions.

60.     Based in part on Chen's denial that he is an inventor, Chen failed to sign assignments and declarations transferring his right, title, and interest in and to the UCSC Inventions to the University, as he was and is obligated to do according to his agreement to the Oath.

61.     The true inventors of the UCSC Inventions are disclosed in the University Patent Applications.

62.     The Genia Patents identify Chen and Randy Davis as inventors. However, Davis is not and cannot be an inventor of the Genia Patents. The subject matter of the Genia Patents, and the claims and inventions disclosed therein, were developed by the University during Chen's employment with the University. Thus, the true inventors of the Genia Patents are: Akeson, David W. Deamer, William B. Dunbar, Noah A. Wilson, and, on information and belief, Chen.

63.     Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, the University seeks correction of the inventorship of the Genia Patents by removing at least Randy Davis and by adding inventors Mark A. Akeson, David W. Deamer, William B. Dunbar, and Noah A.

Wilson.

## **Second Claim for Relief**

### **Declaration of Patent Ownership**

### **(Against Chen and Genia)**

64.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

65.     Upon leaving the University and joining Genia, Chen secretly started filing a number of patent applications relating to his work at the University.   More specifically, he filed patent applications while at Genia, which incorporated UCSC Inventions that he and others conceived and developed while he was at the University, including but not limited to, inventions relating to the manufacture of large scale arrays of biological nanopores that can operate independently of each other for use in sequencing DNA molecules.    A number of these patent applications containing UCSC Inventions have been granted into issued patents. Chen assigned these applications and patents containing UCSC Inventions to Genia.   These applications and patents (further defined above) are referred to generally as the Genia Patents.

66.     The Genia Patents include, but are not limited to:

        a.     U.S. Serial No. 12/658,604, filed February 8, 2010 (now U.S. Patent No. 8,324,914);

        b.     U.S. Serial No. 13/620,973, filed September 15, 2012 (now U.S. Patent No. 8,461,854);

        c.     U.S. Serial No. 13/893,142, filed May 13, 2013 (now U.S. Patent No. 9,041,420);

        d.     U.S. Serial No. 14/513,642, filed October 14, 2014 (now U.S. Patent No. 9,377,437); and

        e.     U.S. Serial No. 15/079,322, filed March 24, 2016.

67.     Chen failed to disclose to the University that he assigned his rights to the UCSC Inventions to Genia.   Genia improperly claims to be the true owner of the UCSC

Inventions, and the Genia Patents constitute an improper and unauthorized assignment of the University's interest in and ownership of the UCSC Inventions to Genia.

68.     A controversy presently exists between the University and Genia as to who is the proper owner of the Genia Patents.

69.     Pursuant to the terms of the Oath, the University is entitled to a declaration that the University is the true and lawful owner of the entire right, title, and interest in and to the Genia Patents, or in the alternative, to an order reassigning all rights in the Genia Patents to the University.  Furthermore, the University is entitled to a declaration that all rights in the Genia Patents granted to parties other than the University are null and void.

<u>**Third Claim for Relief**</u>

**Breach of Contract**

**(Against Chen)**

70.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

71.     On September 15, 2005, the University and Chen entered into the Oath—a valid, binding, and enforceable written agreement.  Chen's execution of the Oath was one of the terms and conditions of his employment with the UCSC Laboratory.

72.     The Oath provides that Chen had an "obligation to assign inventions and patents" that he conceived or developed during the time he was employed by University or utilizing University's research facilities, resources, or funds; Chen had an "obligation to promptly report and fully disclose the conception and/or reduction to practice of potentially patentable inventions" to the University so that the University could "determine [its] rights and equities therein"; and if the University determined any such invention was patentable, the Oath further required Chen to "execute any documents and do all things necessary . . . to assign to [the] University all rights, title, and interest therein and to assist [the] University in securing patent or analogous protection thereon."

73.    At all times relevant herein, Chen knew of his obligation to execute any and all assignments and declarations for any inventions that he conceived or developed while employed by the University, and to fully cooperate with the University's efforts to secure patent protection for any such inventions.

74.    At all times relevant herein, the University has performed all of its obligations under the Oath.

75.    On several occasions in 2009 and 2010, the University asked Chen to sign declarations regarding some of the Abandoned University Patent Applications, but Chen failed to respond.  On one occasion, in connection with one of the Abandoned University Patent Applications, Chen responded to the University's requests verbally during a telephone conversation with the University's outside counsel, Matthew Kaser, indicating that he would not sign a declaration in connection with that application "at that time."  During this time period, Chen never stated or otherwise indicated that he would not abide by his obligations under the Oath in connection with future applications, including specifically any of the Active University Patent Applications.

76.    In January 2014, the University asked Chen to sign a declaration regarding its recently-filed Patent Application Serial No. 14/056,636, which was filed on October 17, 2013.  Additionally, for the first time, the University asked to execute assignments as to the previously-filed University Patent Applications which identify Chen as an inventor, identified as Serial No. 60/921,787, filed on April 4, 2007; Serial No. 60/931,115, filed on May 21, 2007; Serial No. 60/967,539, filed on September 4, 2007; Serial No. 12/080,684, filed on April 8, 2004; PCT Application Serial No. PCT/US2008/004467, filed on April 8, 2004; and Serial No. 12/450,633, filed on October 2, 2009.  The University also asked that Chen sign an assignment as to the recently-filed Patent Application Serial No. 14/056,636.

77.    In March 2014, for the first time, Chen stated that he did not believe he was an

inventor of the claims in those patent applications.  On several occasions over the next two years, Chen (through the counsel that he retained) requested additional information from the University regarding the University Patent Applications and made statements suggesting that he might sign the declarations and assignments.  In February 2016, Chen (through his counsel) stated that he had concluded he was not an inventor of the University Patent Applications, but still carefully avoided saying that he was refusing to sign the documents.  Despite his characterization otherwise, Chen's response as of that time, February 2016, was a *de facto* refusal to comply with his obligations under the Oath.

78.   Chen has materially breached the Oath by, among other wrongful actions:

a.   Failing to execute the assignments and declarations regarding the UCSC Inventions when requested to do so by the University;

b.   Failing to assign his rights and interest in the UCSC Inventions to the University; and

c.   Failing to notify the University of, and improperly using the UCSC Inventions, which rightfully belong to the University, to pursue patent applications and issued patents which were subsequently assigned to his new company, Genia.

79.   Chen's failure to perform his duties and obligations under the Oath constitutes a material breach thereof.

80.   By his wrongful action of assigning his rights in the UCSC Inventions to Genia, both Chen and Genia have profited from and been unjustly enriched by the UCSC Inventions, which rightfully belong to the University.  Any compensation received by Chen from Genia (and from Genia's acquirer, Roche) relating to the UCSC Inventions and the Genia Patents should be disgorged and returned to the University.

81.   By reason of Chen's breaches of the Oath, the University is entitled to all

necessary relief to establish that the University is the true and lawful owner of the entire right, title, and interest in and to the Active University Patent Applications, including a declaration of such rights, a further declaration that Chen has waived any rights he has as an inventor of the Active University Patent Applications and related UCSC Inventions, and specific performance of any of Chen's obligations under the Oath necessary to effectuate the University's ownership of the inventions.   With respect to the request for specific performance of Chen's obligations under the Oath, the University lacks an adequate remedy at law.

82.     By reason of Chen's breaches of the Oath, the University has suffered damages in an amount to be proven at trial.

83.     Additionally, Chen's share of the Acquisition Payment was wrongfully acquired due to his breaches of the Oath and his duties to the University.   Chen currently holds his share of the Acquisition Payment in a constructive trust on behalf of the University, which should be disgorged and returned to the true owner, the University.

## Fourth Claim for Relief

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### (Against Chen)

84.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

85.     Every contract entered into in the State of California contains an implied covenant of good faith and fair dealing, whereby the parties to the contract agree not to do anything that will deprive the other party of the benefit of that agreement.

86.     The Oath, like all contracts, contained an implied promise of good faith and fair dealing.

87.     Chen breached the implied covenant and deprived the University of the benefits of the Oath by, among other wrongful actions:

a.      Failing to execute the assignments and declarations regarding the UCSC Inventions when requested to do so by the University;

b.      Failing to assign his rights and interest in the UCSC Inventions to the University; and

c.      Failing to notify the University of, and improperly using the UCSC Inventions, which rightfully belong to the University, to pursue patent applications and issued patents which were subsequently assigned to his new company, Genia.

88.    By reason of Chen's breaches of the implied covenant of good faith and fair dealing, the University has suffered damages in an amount to be proven at trial.

**Fifth Claim for Relief**

**Conversion**

**(Against Chen and Genia)**

89.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

90.    Chen's conduct described herein constitutes conversion under California law, and Genia has aided and abetted Chen's conversion by offering substantial assistance and acting with knowledge of Chen's conversion.

91.    Pursuant to the terms of the Oath, University policy and associated terms of Chen's employment with the University, the University owns the UCSC Inventions, the inventions in the Genia Patents that are based on the inventions of Chen and others during Chen's time at UCSC, and Chen's written materials, including his laboratory notebooks, from the UCSC Laboratory.

92.    Chen intentionally and substantially interfered with the University's ownership of the foregoing property by, among other wrongful actions:

a.      Failing to execute the assignments and declarations regarding the

UCSC Inventions when requested to do so by the University;

    b.    Failing to assign his rights and interest in the UCSC Inventions to the University;

    c.    Failing to notify the University of, and improperly using the UCSC Inventions, which rightfully belong to the University, to pursue patent applications and issued patents which were subsequently assigned to his new company, Genia; and

    d.    Failing to return to the University and/or destroying his written materials from the UCSC Laboratory, including his laboratory notebooks, in violation of the terms and conditions of his employment.

93.    Genia has aided and abetted Chen's acts of conversion by, among other things, pursuing patent applications and patent rights in the UCSC Inventions, accepting Chen's assignment of patent applications and patent rights in the UCSC Inventions to Genia, and failing to return those patent applications and rights in the UCSC Inventions to the rightful owner, the University.  Genia's actions constitute substantial assistance to Chen's acts of conversion.

94.    Chen is one of the co-founders of Genia.  At all times relevant hereto, Genia had knowledge of Chen's obligations to assign his rights and interests in the UCSC Inventions to the University, Chen's breaches of the Oath, Chen's failure to execute assignments and declarations regarding the UCSC Inventions, and Chen and Genia's failure to notify the University of, and improper use of the UCSC Inventions, to pursue patent applications which were subsequently assigned to Genia.

95.    The University did not consent to any of the foregoing wrongful actions by Chen and Genia.

96.    A significant portion of the $125 million Acquisition Payment that Genia

received from Roche is attributable to the value of the Genia Patents, and those funds properly belong to the University.   Genia wrongfully received the Acquisition Payment, which it currently holds in a constructive trust on behalf of the University, and should be disgorged and returned to the University.   Upon information and belief, Chen personally received a substantial portion of the Acquisition Payment, and his share of the Acquisition Payment is also held in a constructive trust on behalf of the University, which should be disgorged and returned to the University.

97.     Chen's and Genia's conduct was a substantial factor in causing the harm to Plaintiff.

## **Sixth Claim for Relief**

### **Constructive Trust**

### **(Against Chen and Genia)**

98.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

99.     Pursuant to the terms of the Oath, University policy and associated terms of Chen's employment with the University, the University is the rightful owner of the UCSC Inventions and the Genia Patents.

100.     Genia acquired the Genia Patents by means of Chen's wrongful actions to which it provided substantial assistance; namely, Chen's breaches of his obligations under the Oath, Chen's failure to execute assignments and declarations regarding the UCSC Inventions to the University, Chen and Genia's failure to notify the University of, and improper use of the UCSC Inventions, to pursue patent applications which were subsequently assigned to Genia, and Chen and Genia's improper conversion of the UCSC Inventions.

101.     At all times relevant hereto, Genia had knowledge of Chen's obligations to assign his rights and interests in the UCSC Inventions to the University, Chen's breaches of his obligations under the Oath, Chen's failure to execute assignments and declarations

regarding the UCSC Inventions to the University, and Chen and Genia's failure to notify the University of, and improper use of the UCSC Inventions, to pursue patent applications which were subsequently assigned to Genia.

102.    Roche agreed to pay Genia's shareholders $125 million in cash, plus another $225 million in contingent payments depending on the achievement of certain milestones (the "Acquisition Payment").  A significant portion of the Acquisition Payment is attributable to the value of the Genia Patents, which are one of Genia's most valuable assets.

103.    By Chen's wrongful actions described herein, and Genia's substantial assistance thereto, both Chen and Genia have profited from and been unjustly enriched by the UCSC Inventions and the Genia Patents, which rightfully belong to the University.  Chen and Genia have further been unjustly enriched by Roche's acquisition of Genia.

104.    Chen and Genia currently hold the Genia Patents and any portion of the Acquisition Payment relating to the UCSC Inventions and the Genia Patents in a constructive trust on behalf of the true owner, the University.

105.    Chen and Genia are not entitled to the Genia Patents and any portion of the Acquisition Payment relating to the UCSC Inventions and the Genia Patents, and those funds should be disgorged and returned to the true owner, the University.

## **REQUEST FOR RELIEF**

Plaintiff prays for judgment as follows:

1.    That the inventorship of the Genia Patents be corrected to reflect the true inventors, who are disclosed in the University Patent Applications, and that Randy Davis be removed as an inventor of the Genia Patents.

2.    That the University shall be declared the true and lawful owner of the entire right, title, and interest in and to the Genia Patents, including but not limited to:

a.   U.S. Serial No. 12/658,604, filed February 8, 2010 (now U.S. Patent No.

8,324,914);

b. U.S. Serial No. 13/620,973, filed September 15, 2012 (now U.S. Patent No. 8,461,854);

c. U.S. Serial No. 13/893,142, filed May 13, 2013 (now U.S. Patent No. 9,041,420);

d. U.S. Serial No. 14/513,642, filed October 14, 2014 (now U.S. Patent No. 9,377,437); and

e. U.S. Serial No. 15/079,322, filed March 24, 2016.

3. That Defendants Chen and Genia be ordered to assign all patent rights in the Genia Patents to the University;

4. That Defendant Chen be ordered to assign any and all patent rights he may have in the Active University Patent Applications relating to the UCSC Inventions to the University, or in the alternative, that Chen be declared to have waived any rights he has as an inventor to the University Active Patent Applications and related UCSC Inventions;

5. That Defendant Chen be ordered to return all of his materials from the UCSC Laboratory, including his notebooks, to the University;

6. That Defendants be ordered to pay damages to Plaintiff according to proof at trial;

7. That a constructive trust be imposed on the Genia Patents and any portion of the Acquisition Payment that Defendant Genia received from Roche relating to the value attributable to the Genia Patents;

8. That Defendant Genia be ordered to disgorge any funds resulting from the Roche acquisition which are attributable to the Genia Patents;

9. That Defendant Chen be ordered to disgorge his share of any funds resulting from the Roche acquisition;

10. That Defendant Chen be preliminarily and permanently enjoined from any

COMPLAINT

further breaches of the Oath; and

11.     That Plaintiff may have such other and further relief as this Court may deem proper, including prejudgment interest and an award of attorneys' fees and costs.

DATE:   December 29, 2016                    BAKER BOTTS LLP


                                   By:  /s/ Stuart C. Plunkett
                                        Stuart C. Plunkett
                                        Paul R. Morico
                                        Ariel D. House
                                        Attorneys for Plaintiff

31

COMPLAINT