Robert J. Gunther, Jr. (NY SBN: 1967652)
robert.gunther@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7518
Facsimile: (212) 230-8888

*Counsel for Defendants Roger Jinteh Arrigo Chen and
Genia Technologies, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California corporation,<br><br>                              Plaintiff,<br><br>        v.<br><br>ROGER JINTEH ARRIGO CHEN, an individual; GENIA TECHNOLOGIES, INC., a Delaware corporation; and DOES 1-25,<br><br>                              Defendants. | Case No. 3:16-cv-07396-WHO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Presiding: Hon. William H. Orrick<br><br>Date: April 26, 2017<br><br>Time: 2:00 PM<br><br>Courtroom: Courtroom 2, 17th Floor<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

STATEMENT OF REQUESTED RELIEF ................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................2

I.     INTRODUCTION .........................................................................................................2

II.    FACTUAL BACKGROUND .........................................................................................3

      A.     Mr. Chen's Employment with the University ...........................................................3

      B.     Genia and the Genia Patents .....................................................................................4

      C.     Plaintiff's Correspondence to Mr. Chen Regarding Patent Applications Filed
            After He Had Left the University ...............................................................................5

      D.     Plaintiff Filed This Action Over Four Years After the First Genia Patent
            Issued .........................................................................................................................6

III.   ARGUMENT ..................................................................................................................6

      A.     Counts II-VI of the Complaint Are Time-Barred as a Matter of Law ....................7

            1.     Plaintiff's Claims in Counts II-VI Are Subject to Three- and Four-
                 Year Statutes of Limitations ........................................................................7

            2.     Plaintiff's Claims for Counts II-VI Were "Complete in All Their
                 Elements" Well Before the Critical Date for the Statutory Bar ...................8

            3.     Plaintiff Had Actual and Constructive Notice of Its Claims Well
                 Before the Critical Dates for the Statutes of Limitations.............................9

                 a.     Mr. Chen's Failure to Execute the Assignments as Requested
                     by the University at the Very Least Triggered a Duty to
                       Investigate Its Claims Regarding the Genia Patents and
                       Purported UCSC Inventions .............................................................9

                 b.     The Publication and Issuance of the Application that Led to
                     the First Genia Patent Provided Notice to Plaintiff and the
                     World of Mr. Chen's Inventorship and Ownership of the
                     Genia Inventions .............................................................................10

                 c.     As a Matter of Law, Plaintiff Had Notice of Mr. Chen's
                     Purported Conversion of His Laboratory Notebooks Made At
                     UCSC When He Left UCSC............................................................15

      B.     Plaintiff's State-Law Claims (Counts II-VI) Are Preempted By Federal Patent
            Law ...........................................................................................................................16

      C.     Plaintiff's Inventorship Claim Should Be Dismissed for Failure to Plead
            Factual Assertions Supporting the Basic Elements of the Claim (Count I)...........19

D.    Plaintiff's Claims Fail as a Matter of Law to the Extent They Are Directed to Patent Applications .................................................................................21

E.    Plaintiff's Contract Claims (Counts III and IV) Fail Where The Oath Imposes No Post-Employment Duty On Plaintiff.............................................................22

F.    Count I, to the Extent Directed to a Patent Application, and Counts II-VI in their Entirety, Should Be Dismissed Without Leave to Amend ...........................24

IV.    CONCLUSION............................................................................................24

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318 (Fed. Cir. 2013)..........................11

*Alamar Biosciences Inc. v. Difco Labs. Inc.*, No. 2:94-cv-01856-DFL-PAN, 1996
    WL 648286 (E.D. Cal. Feb. 27, 1996)...............................................................11

*AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631 (Cal. Ct. App.
    2006), *as modified* (Oct. 30, 2006) .................................................................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................20

*Batts v. Bankers Life & Cas. Co.*, No. C 13-04394 SI, 2014 WL 296925 (N.D.
    Cal. Jan. 27, 2014) ......................................................................................23

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 487 F.
    Supp. 2d 1099 (N.D. Cal. 2007), *aff'd*, 583 F.3d 832 (Fed. Cir. 2009),
    *aff'd*, 563 U.S. 776 (2011) ...............................................................................7

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583
    F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) ......................................14

*Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*, No. 1:12-CV-01310 LJO,
    2015 WL 925588 (E.D. Cal. Mar. 3, 2015) ......................................................20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................20

*Bionghi v. Metropolitan Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358 (Cal. Ct.
    App. 1999) ................................................................................................18

*Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995) ....................................................24

*Brown v. Brown*, No. CV 13-03318 SI, 2013 WL 5947032 (N.D. Cal. Nov. 5,
    2013) ......................................................................................................17

*Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223 (Fed. Cir. 1994) ..............20

*Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, No. 5:15-CV-1572, 2016 WL
    5463058 (N.D. Ohio Sept. 29, 2016) ...............................................................20

*Davies v. Krasna*, 14 Cal.3d 502 (1975)..................................................................7

*Diversified Capital Inv., Inc. v. Sprint Commc'ns, Inc.*, No. 15-CV-03796-HSG,
    2016 WL 2988864 (N.D. Cal. May 24, 2016) ..................................................22

*Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998)....................................20, 21

*Fehl v. Manhattan Ins. Grp.*, No. 11-cv-02688-LHK, 2012 WL 10047 (N.D. Cal.
     Jan. 2, 2012).........................................................................................................................7

*Felicien v. PNC Mortg.*, No. C-11-2388 EMC, 2012 WL 1413231 (N.D. Cal. Apr.
     23, 2012)...............................................................................................................................8

*Fin Brand Positioning, LLC v. Take 2 Dough Prods., Inc.*, 758 F. Supp. 2d 37
     (D.N.H. 2010).....................................................................................................................22

*Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914 (Cal. 2005) ............................................8

*Gen. Elec. Co. v. Wilkins*, No. 1:10-CV-00674-OWW, 2011 WL 3163348 (E.D.
     Cal. July 26, 2011)............................................................................................................17

*Gen. Elec. Co. v. Wilkins*, No. CV F 10-0674 LJO JLT, 2012 WL 3778865 (E.D.
     Cal. Aug. 31, 2012)...........................................................................................................10

*Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2016 WL
     6662996 (N.D. Cal. Nov. 10, 2016)...........................................................................12, 13

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-CV-01273 LJO, 2012 WL
     691758 (E.D. Cal. Mar. 2, 2012), *aff'd*, 587 F. App'x 654 (Fed. Cir. 2014)..............17, 18

*Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898 (N.D. Cal. 2016)......................................22

*HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347 (Fed. Cir. 2010), *as
     amended on reh'g in part* (June 14, 2010).................................................................16, 21

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998)
     *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers,
     Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) ...............................................................................17

*Intercept Pharm., Inc. v. Fiorucci*, No. 1:14-CV-1313-RGA, 2017 WL 253966
     (D. Del. Jan. 20, 2017)......................................................................................................20

*Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634 (N.D. Cal. 1993).........................16

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) ..............................................8

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (Cal. 1988) ......................................................16

*Kamdem-Ouaffo v. Pepsico, Inc.*, No. 14 CV 227 (KMK), 2015 WL 1011816
     (S.D.N.Y. Mar. 9, 2015)....................................................................................................21

*Lyden v. Nike Inc.*, No. 3:13-CV-00662-HZ, 2014 WL 2563401 (D. Or. June 6,
     2014)...................................................................................................................................17

*Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C-04-03843 RMW, 2007 WL
2746736 (N.D. Cal. Sept. 20, 2007) ...............................................................11

*Methode Elecs. Inc. v. Hewlett-Packard Co.*, No. C 99-04214 SBA, 2000 WL
1157933 (N.D. Cal. May 4, 2000) .................................................................17

*Motha v. Time Warner Cable Inc.*, No. 16-cv-03585-HSG, 2016 WL 7034039
(N.D. Cal. Dec. 2, 2016) ................................................................................7

*Mueller v. Auker*, 700 F.3d 1180 (9th Cir. 2012) ...............................................24

*Norgart v. Upjohn Co.*, 981 P.2d 79 (Cal. 1999)...................................................8

*Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811 (Cal. 2011) ........................19

*Optional Capital, Inc. v. Das Corp.*, 222 Cal. App. 4th 1388 (Cal. Ct. App. 2014) ...................19

*Panaszewicz v. GMAC Mortg., LLC*, No. C 13-1162 MEJ, 2013 WL 3956355
(N.D. Cal. July 29, 2013) ...............................................................................19

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150
Cal. App. 4th 384 (Cal. 2007)........................................................................18

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516 (Cal.
Ct. App. 2003)................................................................................................23

*Picazio v. Melvin K. Silverman & Assocs., P.C.*, 965 F. Supp. 2d 1411 (S.D. Fla.
2013) ...............................................................................................................22

*Raifman v. Wells Fargo Advisors, LLC*, No. C 11-02885-SBA, 2014 WL
12013436 (N.D. Cal. Mar. 31, 2014), *aff'd sub nom.*, *Raifman v. Wachovia
Sec., LLC*, 649 F. App'x 611 (9th Cir. 2016)................................................10

*Segal v. Silberstein*, 156 Cal. App. 4th 627 (Cal. Ct. App. 2007) ..................23

*Skilstaf Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012) .......................22

*Smith v. Visa U.S.A., Inc.*, No. C 11-01634 SI, 2011 WL 2709819 (N.D. Cal. July
12, 2011) .........................................................................................................19

*Sontag Chain Stores Co. v. Nat'l Nut Co. of Cal.*, 310 U.S. 281 (1940)......................11

*Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276 (KAM), 2016 WL
7471307 (E.D.N.Y. Dec. 28, 2016) ..............................................................16

*Target Tech. Co. v. Williams Advanced Materials, Inc.*, No. SACV 04-1083, 2008
WL 5002935 (C.D. Cal. Nov. 21, 2008).......................................................14

*Tethys Bioscience, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, No. C09-5115 CW, 2010 WL 2287474 (N.D. Cal. June 4, 2010)......................................18, 22

*Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292 (Fed. Cir. 2002) ...............................................20

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366 (Fed. Cir. 1999) ....................16

*V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307 (Fed. Cir. 2005)....................................13

*Wang v. Palo Alto Networks, Inc.*, No. C 12-05579 WHA, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014).................................................................................................11, 12

*WesternGeco v. Ion Geophysical Corp.*, No. 09-cv-1827, 2009 WL 3497123 (S.D. Tex. Oct. 28, 2009) ............................................................................................................11

*Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387 (1936) ........................................11

*Zody v. Microsoft Corp.*, No. 12-CV-00942-YGR, 2012 WL 1747844 (N.D. Cal. May 16, 2012)...............................................................................................................18

## STATUTES, RULES, AND REGULATIONS

37 C.F.R. § 1.11(a)..........................................................................................................................11

37 C.F.R. § 1.495 ............................................................................................................................10

35 U.S.C. § 116................................................................................................................................21

35 U.S.C. § 120................................................................................................................................13

35 U.S.C. § 135(a) ...........................................................................................................................21

35 U.S.C. § 256.....................................................................................................................6, 19, 22

Cal. Civ. Code § 1644......................................................................................................................23

Cal. Code Civ. Proc. § 337 ...............................................................................................................7

Fed. R. Civ. P. 12(b)(6).....................................................................................................................1

## OTHER AUTHORITIES

4 A Donald S. Chisum, *Chisum on Patents* § 13.03[2] ................................................................13

MPEP § 201.07 ................................................................................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO:  PLAINTIFF AND ITS ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that on April 26, 2017 at 2:00 PM, before the Honorable William H. Orrick, Defendants Roger Chen and Genia Technologies, Inc. ("Genia") (collectively, "Defendants") will move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff The Regents of the University of California's ("Plaintiff's" or "the University's") Complaint.  This Motion is supported by the following Memorandum of Points and Authorities; the Request for Judicial Notice, Declaration of Robert J. Gunther, Jr., and exhibits attached thereto; and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

### STATEMENT OF REQUESTED RELIEF

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants request that the Court dismiss all claims presented in Plaintiff's Complaint, and dismiss with prejudice Count I, to the extent directed to U.S. Provisional Patent Application Serial No. 15/079,322, and Counts II-VI in their entirety.

### STATEMENT OF ISSUES TO BE DECIDED

(1) Whether Plaintiff's state-law claims, which accrued no later than five-and-a-half years ago, are barred by the applicable three-year (for 1 claim) and four-year (for 4 claims) statutes of limitations (COUNTS II-VI);

(2) Whether Plaintiff's state-law claims, all of which rise or fall solely based on Plaintiff's claims regarding patent inventorship, are preempted by federal patent law (COUNTS II-VI);

(3) Whether Plaintiff's claim for correction of inventorship should be dismissed in light of Plaintiff's failure to plead any facts supporting the inference that Mr. Chen and the listed co-inventor on the Genia Patents did not solely conceive and develop the inventions of the Genia Patents (COUNT I);

(4) Whether Plaintiff's claims regarding the inventorship of patent applications that are still pending before the United States Patent and Trademark Office ("USPTO") must be dismissed in light of well-settled precedent on this issue (COUNTS I-VI); and

(5) Whether Plaintiff's contract claims should be dismissed where the Oath imposed no post-employment duties on Mr. Chen after he left UCSC and was no longer using University facilities or funds (COUNTS III-IV).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Nearly nine years after Roger Chen left the University of California, Santa Cruz ("UCSC") and at least six years after Plaintiff should have been aware of the facts purportedly giving rise to its claims, Plaintiff filed this lawsuit against Mr. Chen, its former student, and the company he later co-founded, Genia, asserting a series of claims that are both time-barred and insufficient as a matter of law.  Plaintiff's claims are premised on the incorrect assumption that Mr. Chen somehow violated his obligations to the University by patenting inventions he conceived of well after leaving UCSC.  Based on these alleged violations, Plaintiff claims ownership and inventorship of patents for which Genia applied and which it obtained after Mr. Chen left UCSC.

On the face of the Complaint, all of Plaintiff's claims fail as a matter of law.  ***First***, five of the six counts in the Complaint (Counts II through VI) are barred by the applicable statutes of limitations—some of them several times over.  ***Second***, Plaintiff's state-law claims for a declaration of patent ownership, breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and constructive trust (Counts II through VI) fail because they are wholly dependent on Plaintiff's inventorship arguments and are therefore preempted by federal patent law.  ***Third***, Plaintiff fails to plead sufficient facts to support its claim of inventorship (Count I) where Plaintiff neither describes the inventions nor explains how each inventor purportedly contributed to the inventions.  ***Fourth***, Plaintiff's claims contained in Counts I through VI are barred to the extent that they seek a determination of inventorship for pending applications that have not issued as patents; it is well settled that such claims must be raised in the USPTO rather than in court.  ***Finally***, Plaintiff's contract claims (Counts III and IV) fail where, by its plain terms, the contract at issue imposed no duties on Mr. Chen after he left UCSC

1    and was no longer using University facilities or funds.

2    **II.    FACTUAL BACKGROUND**

3        **A.    Mr. Chen's Employment with the University**

4        Plaintiff's Complaint alleges the following facts[1]: From the Fall of 2005 to January of

5    2008, Mr. Chen was enrolled as a graduate student in UCSC's biochemistry program. (Compl.

6    ¶ 15.) Mr. Chen also worked as a researcher for the University while he was enrolled in UCSC.

7    (*Id.* ¶ 16.) Prior to beginning his work in a UCSC biophysics lab under Dr. Mark Akeson, Mr.

8    Chen signed an Oath of Allegiance, Patent Policy, and Patent Acknowledgement ("Oath") setting

9    forth certain obligations of the parties regarding intellectual property in connection with Mr.

10    Chen's employment. (Compl. Ex. A.) As provided in the Oath, Mr. Chen's obligations included

11    a requirement to (1) assign inventions and patents that he conceived or developed while using

12    University research facilities or funds; (2) promptly report and fully disclose conception and/or

13    reduction to practice of potentially patentable inventions; and (3) execute all documents and do

14    all things necessary to assign to the University all rights, title, and interest to inventions deemed

15    by the University to be patentable or protectable. (*Id.*) The Oath expressly provides that these

16    obligations apply only during Mr. Chen's employment or when he is using University resources:

17
18
19    > I acknowledge that I am bound during any periods of employment
    > by University or for any period during which I conceive or develop
    > any invention during the course of my utilization of any University
    > research facilities, or any gift, grant, or contract research funds
    > received through the University.

20    (*Id.*).

21        The Complaint asserts that during his employment, Mr. Chen developed a series of

22    inventions relating to DNA sequencing using nanopore technology. (Compl. ¶¶ 19-20.) As

23    alleged in the Complaint, a nanopore refers to a very small hole through which DNA passes;

24    when the nanopore is immersed in conducting fluid and a voltage is applied, the order of

25    nucleotides within a DNA molecule passing through the nanopore may be determined. (*Id.* ¶

26
27    _____
    [1] Defendants assume the truth of these allegations solely for purposes of this motion to dismiss.

28

19.)  Although the Complaint does not describe these purported inventions in any detail, Mr.

Chen's inventions were allegedly directed to improvements of nanopore technology.  (*Id.* ¶¶ 20-

26.)

        The University filed three patent applications, allegedly on these so-called UCSC

Inventions, while Mr. Chen was still employed at the University.  (*Id.* ¶ 34.)  Notably, the

Complaint does not suggest that Mr. Chen breached any duty outlined in the Oath during the

course of his employment, or that the University asked him to take any actions regarding these

patent applications during his employment.

### B.    Genia and the Genia Patents

        At issue in this action are four Genia patents and one application, which all share a

common specification and list Mr. Chen and Genia employee Randy Davis as co-inventors, and

the timing upon which the inventions underlying the patents and applications were conceived

and reduced to practice.  (*See* Appendix A (time line outlining events of action); Appendix B

(chart outlining relationships among the Genia Patents).)  Notably, Mr. Chen left UCSC over

nine years ago, in January 2008.  (Compl. ¶ 15.)  In March 2009, more than a year after his

departure from UCSC, Mr. Chen co-founded Genia, a genetic sequencing company.  (*Id.* ¶ 39.)

Then, more than two years after Mr. Chen left the University, and after Mr. Chen had been

working at Genia for nearly a year, Genia filed its first patent application on February 8, 2010.

(*Id.* ¶ 52.)

        Specifically, Genia's first filed and issued patent, U.S. Patent No. 8,324,914, was filed on

February 8, 2010.  Its application published on August 11, 2011, and it issued as a patent on

December 4, 2012.  (Request for Judicial Notice ("RJN") Ex. A.)  The second filed and issued

Genia patent, U.S. Patent No. 8,461,854, was filed on September 15, 2012, its application

published on January 17, 2013, and it issued as a patent on June 11, 2013.  (RJN Ex. B.)  The

other patents, all with the same specification, issued on May 26, 2015 and June 28, 2016.  (RJN

Exs. C, D.)  Genia's patent application 15/079,322 was filed on March 24, 2016, and published

1    on November 24, 2016.  (RJN Ex. E.)  The Complaint collectively refers to these patents and

2    application as the "Genia Patents."

3        **C.    Plaintiff's Correspondence to Mr. Chen Regarding Patent Applications Filed
             After He Had Left the University**

4

5        Beginning "in early 2009," more than a year after Mr. Chen left the University, Plaintiff

6    began contacting Mr. Chen, asking him to sign a declaration regarding his purported

7    inventorship of a UCSC patent application concerning nanopore technology filed after Mr. Chen

8    had left UCSC.  (Compl. ¶ 36.)  The Complaint asserts that Mr. Chen failed to respond, was

9    "evasive," and in one instance told the University that he would not sign a declaration "at that

10   time."  (*Id.* ¶¶ 36-37.)  The University stopped contacting Mr. Chen in 2010.

11       Four years later, in 2014, after Mr. Chen had obtained two of the above-mentioned Genia

12   Patents, the University again reached out to Mr. Chen and requested that he sign inventorship

13   papers relating to a new patent application that the University had filed on October 17, 2013.

14   (*Id.* ¶¶ 40-41.)  Plaintiff also asserts that at that time, it requested "for the first time" that Mr.

15   Chen execute assignments as to the patent applications Plaintiff had filed in 2007 and 2008.[2]  (*Id.*

16   ¶¶ 28, 41.)  As of 2014, however, these previous patent applications were no longer active—

17   Plaintiff had expressly abandoned one U.S. patent application by September 2012, and the other

18   U.S. patent applications expired in 2008.  (RJN Exs. F-I.)

19       The Complaint lists a total of five active University patent applications, filed between

20   October 17, 2013 and May 23, 2016 (the "UCSC Patent Applications").  (*Id.* ¶ 28.)  The

21   Complaint further states that the University filed four of these five UCSC Patent Applications

22   *after* expressly learning of the Genia Patents.  (*Id.* ¶ 45.)  Mr. Chen did not agree to sign the

23   inventorship documents regarding the new UCSC Patent Applications.  (*Id.* ¶¶ 41-43, 45-50.)

24

25   _____

26   [2] The Complaint confusingly states that the University's January 14, 2014 request was "the first
     time" the University asked Mr. Chen to execute assignments as to the patent applications filed in

27   2007-2008.  (Compl. ¶ 41.)  Regardless of whether the University first asked Mr. Chen in 2009
     or 2014 to sign documents, the claims are still time-barred, as explained below.

28

### D.   Plaintiff Filed This Action Over Four Years After the First Genia Patent Issued

Plaintiff filed this action on December 29, 2016, nearly nine years after Mr. Chen left UCSC, more than five years after the first Genia patent application was published, and more than four years after the first Genia Patent issued.[3]  Count I seeks a "correction" of inventorship of the Genia Patents under 35 U.S.C. § 256.  Plaintiff seeks to unilaterally remove Genia co-inventor Mr. Davis, and add UCSC faculty members Mark Akeson, David Deamer, and William Dunbar, and former UCSC researcher Noah Wilson.  (*Id.* ¶¶ 45, 62.)  Count II seeks a declaration that UCSC is the "true and lawful owner" of the Genia Patents, an assertion purportedly based on the Oath signed by Mr. Chen while he was at UCSC.  (*Id.* ¶ 69.)  Counts III (breach of contract) and IV (breach of implied covenant of good faith and fair dealing) assert that Mr. Chen breached his duties outlined in the Oath by obtaining the Genia Patents and failing to execute the assignments and declarations requested by Plaintiff.  (*Id.* ¶¶ 78, 87.)  Count V (conversion) asserts that Defendants interfered with the University's ownership of the UCSC Inventions by wrongfully acquiring the Genia Patents and by Mr. Chen's refusal to execute assignments for Plaintiff.  (*Id.* ¶¶ 90-96.)  Count VI (constructive trust) asserts that "a significant portion" of the amount that Roche paid to acquire Genia is attributable to the Genia Patents such that Plaintiff is entitled to disgorgement of those funds.  (*Id.* ¶¶ 102-03.)

### III.   ARGUMENT

Each of Plaintiff's claims fails for multiple independent reasons.  Five of the six counts in Plaintiff's Complaint come several years after the expiration of the applicable statutes of limitation, and are also preempted by federal patent law.  Plaintiff's sole remaining claim, for correction of inventorship, must be dismissed because the Complaint fails to describe either the inventions at issue or each alleged inventor's contribution.  Further, all claims fail to the extent they address inventorship of patent applications, as only the USPTO may determine this issue.

---

[3] Defendants provide as Appendix A a timeline of the events as alleged in the Complaint and as based on the facts of which the Court may take judicial notice.

1    Finally, Plaintiff's contract claims additionally fail because the Oath imposed no duties on Mr.

2    Chen after he left UCSC and ceased using University facilities and funds.  Because the

3    Complaint fails to allege a plausible claim for relief, even accepting Plaintiff's factual allegations

4    as true, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

### A.    Counts II-VI of the Complaint Are Time-Barred as a Matter of Law

#### 1.    Plaintiff's Claims in Counts II-VI Are Subject to Three- and Four-Year Statutes of Limitations

Plaintiff's patent ownership and breach of contract claims (Counts II-IV of the

Complaint, ¶¶ 64-88) are subject to a four-year statute of limitations.  *See* Cal. Code Civ. Proc. §

337 (setting out four-year statute of limitations for breach of contract claims); *Fehl v. Manhattan*

*Ins. Grp.*, No. 11-cv-02688-LHK, 2012 WL 10047, at *4 (N.D. Cal. Jan. 2, 2012) (applying four-

year statute of limitations to breach of good faith for contract claim); *Bd. of Trs. of Leland*

*Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 487 F. Supp. 2d 1099, 1111-12 (N.D. Cal.

2007), *aff'd*, 583 F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) (applying four-year

statute of limitations to patent ownership claim under California law).  Plaintiff's conversion

claim (Count V of the Complaint, ¶¶ 89-97) is subject to a three-year statute of limitations.

*Motha v. Time Warner Cable Inc.*, No. 16-cv-03585-HSG, 2016 WL 7034039, at *3 (N.D. Cal.

Dec. 2, 2016) (outlining three-year statute of limitations for conversion claim).  Plaintiff's

constructive trust claim (Count VI of the Complaint, ¶¶ 98-105) is a remedy, not a stand-alone

claim, and is subject to the three- and four-year statutes of limitations of the other claims,

depending on the underlying substantive right.  *See Davies v. Krasna*, 14 Cal.3d 502, 515-16

(1975) ("[A]n action seeking to establish a constructive trust is subject to the limitation period of

the underlying substantive right.").  Because Plaintiff filed this lawsuit on December 29, 2016, to

be timely, Plaintiff's conversion claim must have accrued *after* December 29, 2013 and its

ownership and contract-based claims must have accrued *after* December 29, 2012.

The statute of limitations for any claim generally begins to run when the claim is

"complete with all of its elements."  *See Stanford*, 487 F. Supp. 2d at 1113 (quoting and citing

1    *Norgart v. Upjohn Co*., 981 P.2d 79, 88 (Cal. 1999)).  While the accrual of a cause of action may

2    be postponed (and the statute of limitations tolled) until the claimant discovers its claim (the

3    "discovery rule"), *id.*, "plaintiffs are required to conduct a reasonable investigation after

4    becoming aware of an injury, and are charged with knowledge of the information that would

5    have been revealed by such an investigation."  *Fox v. Ethicon Endo-Surgery, Inc*., 110 P.3d 914,

6    920 (Cal. 2005).  Where, as here, "the running of the limitations period [for each of these claims]

7    is apparent on the face of the complaint," the Court should dismiss the claims at the pleadings

8    stage.  *See Felicien v. PNC Mortg*., No. C-11-2388 EMC, 2012 WL 1413231, at *2 (N.D. Cal.

9    Apr. 23, 2012) (citing *Jablon v. Dean Witter & Co*., 614 F.2d 677, 682 (9th Cir. 1980) (outlining

10   standard for motion to dismiss based on statute of limitations)).

### 2.    Plaintiff's Claims for Counts II-VI Were "Complete in All Their Elements" Well Before the Critical Date for the Statutory Bar

12       As is apparent from the face of the Complaint, each of Plaintiff's claims was complete

13   well before the critical date applicable to each claim.  For example, as to the contract-based

14   claims (Counts III and IV), Plaintiff asserts that Mr. Chen breached the Oath by (1) failing to

15   execute assignments and declarations regarding the UCSC Inventions; (2) failing to assign his

16   rights and interest in the UCSC Inventions to the University; and (3) pursuing the Genia Patents

17   without informing the University.  (Compl. ¶ 78.)  As to the conversion claim, Plaintiff asserts

18   that these same alleged actions constituting a breach of contract also constitute conversion

19   (Count V) because Mr. Chen "interfered with the University's [alleged] ownership" of the UCSC

20   Inventions and Genia Patents.  (*Id.* ¶ 92).  Plaintiff further asserts a conversion claim based on

21   Mr. Chen's alleged "fail[ure] to return to the University and/or destr[uction of] his written

22   materials from the UCSC Laboratory."  (*Id.*)  Finally, Plaintiff's ownership claim (Count II)

23   seeks a declaration that Plaintiff owns the Genia Patents because Mr. Chen allegedly conceived

24   and developed them while at UCSC.  (*Id.* ¶¶ 65-67.)  Yet, as set forth in the Complaint and as

25   shown in Defendant's Appendix A, all of the operative events occurred well before December

26   29, 2012:

- The University alleges that Mr. Chen conceived and developed the UCSC Inventions while he was a graduate student at UCSC. He left UCSC in January 2008. (*Id.* ¶ 15.)

- The University alleges that Mr. Chen deprived UCSC of its alleged rightful possession of his notebooks (*id.* ¶ 92), which necessarily occurred when Mr. Chen left UCSC in January 2008.

- The University alleges that Mr. Chen breached the Oath when he failed to sign certain papers sent to him by the University in 2009 and 2010. (*Id.* ¶¶ 2, 36-37, 75.)

- The University claims to be entitled to ownership of the Genia Patents, all of which share the same inventors and same specification, and all of which claim priority to an application first filed with the Patent Office on February 8, 2010. (*Id.* ¶ 52.) The application for the first Genia Patent published on August 11, 2011, and issued as U.S. Patent No. 8,324,914 on December 4, 2012. (*Id.*; RJN Ex. A.)

Thus, the Complaint itself makes clear that Plaintiff could have asserted each of its claims well before the critical dates of December 29, 2012 (Counts II-IV) and December 29, 2013 (Count V).

### 3. Plaintiff Had Actual and Constructive Notice of Its Claims Well Before the Critical Dates for the Statutes of Limitations

#### a. Mr. Chen's Failure to Execute the Assignments as Requested by the University at the Very Least Triggered a Duty to Investigate Its Claims Regarding the Genia Patents and Purported UCSC Inventions

Equally clear from the Complaint is that Plaintiff had actual and constructive notice of its claims regarding the Genia Patents and UCSC Inventions well before the applicable critical dates. Plaintiff repeatedly suggests in its Complaint that Mr. Chen somehow hid his actions from Plaintiff. For example, the Complaint asserts without support that Mr. Chen "stonewalled"

1  UCSC while "covertly seeking to patent the same technology he helped invent at the

2  University."  (Compl. ¶¶ 51, 53).  Yet, Plaintiff's own factual allegations show that, *starting in*

3  *2009*, Plaintiff began asking Mr. Chen to execute assignments regarding the UCSC inventions,

4  and Mr. Chen failed to do so.  (*Id.* ¶¶ 36-37.)  Further, the Complaint admits that as a result of

5  Mr. Chen's failure to sign these documents, "several of the patent applications were denied for

6  incompleteness" because Plaintiff "had not successfully obtained a declaration from Chen."  (*Id.*

7  ¶ 38.)  As a matter of law, any reasonable party would know of its alleged injury where Mr.

8  Chen's failure to sign these documents purportedly prevented Plaintiff from obtaining patents.

9  *See, e.g.*, *Gen. Elec. Co. v. Wilkins*, No. CV F 10-0674 LJO JLT, 2012 WL 3778865, at *17

10 (E.D. Cal. Aug. 31, 2012) (determining that breach occurred as a matter of law where inventor

11 failed to assign inventions and plaintiff "was required to seek permission with the USPTO to

12 continue the prosecution of the [patent at issue] absent the assignment").  Plaintiff's applications

13 were all abandoned or expired by September 2012, more than three months before the earliest

14 critical date of December 29, 2012.[4]  (*See* RJN Exs. F-I.)

15      Further, at the very least, these facts triggered Plaintiff's duty to investigate possible

16 claims.  Yet the Complaint includes no allegations that Plaintiff ever investigated Mr. Chen's

17 failure to execute the assignments over this multi-year period before December 29, 2012.  This

18 lack of investigation is fatal to Plaintiff's claims.  *See Raifman v. Wells Fargo Advisors, LLC*,

19 No. C 11-02885-SBA, 2014 WL 12013436, at *8 (N.D. Cal. Mar. 31, 2014), *aff'd sub nom.*,

20 *Raifman v. Wachovia Sec., LLC*, 649 F. App'x 611 (9th Cir. 2016) (providing that a plaintiff

21 must investigate its claim "[o]nce the plaintiff has a suspicion of wrongdoing").

22          **b.      The Publication and Issuance of the Application that Led to**
                     **the First Genia Patent Provided Notice to Plaintiff and the**

23

24

25 ─────────────────────

26 [4]  One of the "UCSC Inventions," PCT/US2008/04467, is an International PCT Application,
    which expires 30 months after its earliest priority date in the United States.  *See* 37 C.F.R. §
27 1.495.  The earliest priority date on PCT/US2008/04467 is April 4, 2007 (*see* Compl. ¶ 28 &
    n.7), meaning that the application expired on October 4, 2009.
28

1

2

### World of Mr. Chen's Inventorship and Ownership of the Genia Inventions

Even apart from Mr. Chen's interactions with the University regarding the UCSC patent applications and Plaintiff's subsequent abandonment of them, there can be no doubt that Plaintiff was or should have been on notice of its claims as of August 11, 2011, when the first Genia Patent application published, and certainly no later than December 4, 2012, when the first Genia patent issued. Once a patent application publishes, it is publicly available and accessible to anyone who wishes to look at it. *See Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1329-30 (Fed. Cir. 2013) (explaining that a patent application and its contents are publicly available once published); 37 C.F.R. § 1.11(a). Further, the Supreme Court has long acknowledged that a patent's issuance constitutes "notice to the world of its existence." *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 393 (1936); *see also Wang v. Palo Alto Networks, Inc.*, No. C 12-05579 WHA, 2014 WL 1410346, at *5 (N.D. Cal. Apr. 11, 2014) ("The United States Supreme Court has stated that issuance of patents and recordation with the [US]PTO constitute notice to the world of their existence.") (citing *Sontag Chain Stores Co. v. Nat'l Nut Co. of Cal.*, 310 U.S. 281, 295 (1940)). Applying these principles, district courts have routinely held that both the issuance of patents and the publication of patent applications provide notice: they are "deemed, as a matter of law, to place those practicing in the same field and prosecuting their own patent applications in the same field on full notice of all of the contents of the publication." *See Wang*, 2014 WL 1410346, at *6; *see also Alamar Biosciences Inc. v. Difco Labs. Inc.*, No. 2:94-cv-01856-DFL-PAN, 1996 WL 648286, at *5-6 (E.D. Cal. Feb. 27, 1996) (finding that a reasonably diligent plaintiff would search the patent database and be aware of patent and applications held by competitor); *Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C-04-03843 RMW, 2007 WL 2746736, at *9 (N.D. Cal. Sept. 20, 2007); *WesternGeco v. Ion Geophysical Corp.*, No. 09-cv-1827, 2009 WL 3497123, at *4-5 (S.D. Tex. Oct. 28, 2009)

1  (finding that statute of limitations began no later than at publication of the application, which

2  disclosed confidential materials subject to the breach of contract claim).

3       In other words, the publication of a patent application or issuance of a patent gives

4  plaintiff constructive notice of its claims if the application or patent discloses information

5  relevant to the claims. *Wang*, 2014 WL 1410346, at *6 (collecting cases). For example, *Wang*

6  dismissed at the pleadings stage a claim for misappropriation of trade secrets as time-barred

7  when the defendant's patent application gave notice of the alleged misappropriation. *Id. Wang*

8  explained that "publication of patents (and now patent applications) must be deemed, as a matter

9  of law, to place those practicing in the same field and prosecuting their own patent applications

10  in the same field on full notice of all of the contents of the publication." *Id.* Similarly, here, the

11  publication of the first Genia Patent application on August 11, 2011, and its issuance on

12  December 4, 2012, gave Plaintiff notice that (1) Mr. Chen and Genia sought patent protection on

13  inventions directed to nanopore technology; (2) Mr. Chen had not assigned the application or

14  patent to Plaintiff; and (3) Mr. Chen claimed the invention set forth therein for himself and

15  Genia. Nor can Plaintiff seriously contend lack of notice where the Complaint itself makes plain

16  that Plaintiff was not only seeking patents in the same technology, but is a sophisticated party.

17  As alleged by the Complaint, Plaintiff has a "patent prosecution manager," was actively seeking

18  patents listing Mr. Chen as an inventor, and even had its outside counsel contact Mr. Chen as

19  early as 2009. (Compl. ¶¶ 26, 34, 37).

20       Further, the publication of the application and issuance of the first Genia Patent precludes

21  any argument by Plaintiff that Mr. Chen's actions somehow prevented it from learning of its

22  claims. (*See id.* ¶ 75 (asserting that Mr. Chen "never stated or otherwise indicated that he would

23  not abide by his obligations").) Indeed, this Court rejected a similar argument raised in

24  *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2016 WL 6662996, (N.D.

25  Cal. Nov. 10, 2016), finding at the pleadings stage that state law claims were time-barred despite

26  the plaintiff's assertions that the defendant's actions tolled the statute of limitations. In

27  *Geovector*, the plaintiff asserted, among other claims, misappropriation of its trade secrets and

28

1   confidential information almost a decade after the parties had engaged in licensing negotiations.

2   *Id.* at *1.  The plaintiff argued that the limitations period was tolled in light of the defendant's

3   affirmations that it would enter into a licensing agreement.  *Id.* at *3.  This Court disagreed,

4   finding the defendant's conduct—including "filing patent applications and obtaining patents" in

5   the face of contemporaneous assertions by the plaintiff of its own intellectual property rights—

6   rendered such reliance by the plaintiff unreasonable.  *Id.*  Under these facts, the plaintiff "should

7   have realized that [the defendant] had no intention of [pursuing a licensing agreement] and

8   instead consistently behaved as though the … technology was its own."  *Id.*  Similarly, Plaintiff

9   here cannot render its belated claims timely by pointing to any supposed evasiveness by Mr.

10  Chen in failing to sign the declarations; any such reliance by Plaintiff was plainly unreasonable

11  in light of Mr. Chen's consistent behavior, demonstrated by the published application and issued

12  patents in his name, that he intended to claim the inventions for himself and Genia.

13      Plaintiff may argue in its opposition that its claims are timely because certain of the

14  UCSC applications were filed and certain of the Genia Patents were applied for and issued after

15  the applicable critical dates.  These facts do not save Plaintiff's claims.  Plaintiff's own

16  Complaint asserts that the Genia Patents are all directed to the same inventions that Mr. Chen

17  allegedly made as a graduate student at UCSC.  (Compl. ¶ 62.)  Moreover, the Genia Patents are

18  ***continuation patents*** based on the exact same application filed on February 8, 2010 and

19  published on August 11, 2011.  A continuation patent "is a second application that contains the

20  same disclosure as the original application," and "may not contain anything that would have

21  been considered 'new matter' if inserted in the original application."  4 A Donald S. Chisum,

22  *Chisum on Patents* § 13.03[2]; *see also V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307,

23  1308 (Fed. Cir. 2005) (explaining that the specification and drawings of parent patents and

24  continuation patents are the same); MPEP § 201.07 (describing continuation applications).  As

25  continuation patents, all of the Genia Patents share a common specification and drawings, with

26  the only difference being the claims.  As a result, all of the Genia Patents also share a common

27  priority date, *i.e.*, an effective date of filing, of February 8, 2010.  *See* 35 U.S.C. § 120 (outlining

28

1    rules for when a later patent is treated "as though filed on the date of the prior application").

2    Thus, all of the Genia Patents and applications are directed to inventions that were originally

3    disclosed in the initial Genia Patent application, which was first filed on February 8, 2010,

4    published on August 11, 2011, and issued on December 4, 2012.  (*See* Appendix B.)

5          Because all of the Genia Patents are directed to inventions disclosed to the world by

6    August 11, 2011, the statute of limitations started on this date notwithstanding that some of the

7    Genia Patents were filed and issued after the critical date.  The Federal Circuit's decision in *Bd.*

8    *of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832 (Fed. Cir.

9    2009), *aff'd*, 563 U.S. 776 (2011), rejected the argument that claims over ownership do not

10   accrue until each patent issues.  *Id.* at 847.  Rather, the statute of limitations starts once the

11   plaintiff is on notice that the defendant asserts ownership over the inventions and is seeking

12   patent protection—it does not matter that some of those patents are applied for and issued after

13   the critical date.  *See id.* (finding ownership claims barred even though certain patents issued

14   after the critical period given that Roche had notice that Stanford asserted ownership of the

15   inventions at issue, continued to seek other patents, and offered Roche a license).

16         For these same reasons, Plaintiff's own filing of additional UCSC patent applications

17   does not make Plaintiff's claims timely.  Not only are these applications purportedly directed to

18   the same inventions that Mr. Chen allegedly made as a graduate student at UCSC, but if

19   Plaintiff's continued filings could toll the statute of limitations, Plaintiff's claims could "run in

20   perpetuity even in the face of continued, blatant violation" of Plaintiff's alleged ownership rights

21   by Defendants.  *See Target Tech. Co. v. Williams Advanced Materials, Inc.*, No. SACV 04-1083,

22   2008 WL 5002935, at *7 (C.D. Cal. Nov. 21, 2008).  This is not the law.  Plaintiff filed these

23   new patent applications after it already abandoned its initial applications or allowed them to

24   expire.  By the time it decided to file additional patent applications, Plaintiff was on notice of the

25   Genia Patents.  Although Plaintiff asserts that it had actual knowledge of the Genia Patents in

26   2014 (Compl. ¶ 45), it had constructive notice much earlier, both when the original Genia patent

27   application published in 2011 and when the first Genia Patent issued in 2012.

28

1

2

           **c.**      **As a Matter of Law, Plaintiff Had Notice of Mr. Chen's Purported Conversion of His Laboratory Notebooks Made At UCSC When He Left UCSC**

3

       Plaintiff's conversion claim, based on Mr. Chen's alleged conversion of his laboratory

4

notebooks created while he was at UCSC, is likewise time-barred.  Mr. Chen left UCSC in

5

January 2008, purportedly depriving UCSC of its alleged rightful possession of his notebooks at

6

that time.  The Complaint makes no allegation that would excuse Plaintiff's failure to bring a

7

conversion claim as to Mr. Chen's notebooks until almost nine years later.  Nor could it—

8

Plaintiff should have realized that it did not have possession of these materials when Mr. Chen

9

left the University in January 2008.  Further, the Complaint includes no allegations that Mr.

10

Chen somehow concealed from Plaintiff that he had these materials.  *See AmerUS Life Ins. Co. v.*

11

*Bank of Am., N.A.*, 143 Cal. App. 4th 631, 639 (Cal. Ct. App. 2006), *as modified* (Oct. 30, 2006)

12

(explaining that the discovery rule applies in a conversion claim only where the defendant

13

"fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in

14

violation of his or her fiduciary duty to the plaintiff").  To the contrary, the Complaint asserts

15

that Plaintiff contacted Mr. Chen "[o]n multiple occasions beginning in early 2009," yet makes

16

no allegation that Plaintiff ever asked for these materials.  (*See* Compl. ¶ 36.)  Given that all facts

17

giving rise to this claim were or should have been in Plaintiff's possession since January 2008,

18

Plaintiff's conversion claim as to Mr. Chen's notebooks is barred by the statute of limitations.

19

                                \*  \*  \*

20

       Simply put, Plaintiff was on notice of its claims and could and should have brought this

21

action years ago.  Instead, Plaintiff sat on its claims until nearly a decade after Mr. Chen left

22

UCSC, during which time he co-founded Genia, obtained patents, and participated in Genia's

23

acquisition by Roche.  (*See* Compl. ¶¶ 55-57 (describing the 2014 purchase of Genia by Roche

24

and Mr. Chen's receipt of payment "primarily due to Mr. Chen's critical role as the co-inventor

25

on the Genia Patents").)  This case poses exactly the type of situation the statute of limitations

26

was designed to prevent: "[o]nce the plaintiff has a suspicion of wrongdoing, and therefore an

27

28

incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (Cal. 1988); *see also Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 654 (N.D. Cal. 1993) (explaining that the statute of limitations protects "society's interest in preventing avoidable increases in the magnitude of the economic harm (damages) caused by breaches of obligations")).  Accordingly, Counts II through VI are time-barred and should be dismissed without leave to amend.

## B.    Plaintiff's State-Law Claims (Counts II-VI) Are Preempted By Federal Patent Law

Plaintiff's state law claims for patent ownership, breach of contract, breach of the duty of good faith and fair dealing, conversion, and constructive trust (Counts II-VI) all depend on a determination of the proper inventorship of the Genia Patents and the UCSC applications.[5]  Each of these claims is therefore preempted by federal patent law.

It is well settled that "the field of federal patent law preempts any state law that purports to define rights based on inventorship."  *See HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010), *as amended on reh'g in part*, (June 14, 2010) (quoting *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999)).  Federal law provides exclusive rules for determining inventorship to ensure a consistent national standard and to reward inventors; in turn, preemption prevents the states from frustrating these objectives by creating their own definitions of, and relief for, inventorship of patents.  *Univ. of Colo. Found., Inc.*, 196 F.3d at 1372 (explaining the purpose of federal patent standard for inventorship).  As a result, "a state law claim that either seeks 'patent-like' protections not provided by federal patent law, or turns on a determination of inventorship, is preempted by federal patent law."  *Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276 (KAM), 2016 WL 7471307, at *7 (E.D.N.Y. Dec. 28, 2016) (finding conversion claim preempted).  In contrast,

---

[5] As described above, although Plaintiff also bases its conversion claim on Mr. Chen's alleged "fail[ure] to return to the University and/or destr[uction of] his written materials from the UCSC Laboratory" (Compl. ¶ 92), such claim is time-barred as a matter of law.

claims that can be established without determining inventorship "are generally not preempted by federal patent law." *Gerawan Farming, Inc. v. Rehrig Pac. Co*., No. 1:11-CV-01273 LJO, 2012 WL 691758, at *7 (E.D. Cal. Mar. 2, 2012), *aff'd*, 587 F. App'x 654 (Fed. Cir. 2014).

Federal patent law preemption most often occurs with tort claims, such as state law conversion claims requiring a determination of inventorship. *See, e.g.*, *Lyden v. Nike Inc*., No. 3:13-CV-00662-HZ, 2014 WL 2563401, at *2-3 (D. Or. June 6, 2014) (finding preemption where "Plaintiff alleges that Defendant Nike converted his intellectual property by securing patents from the PTO for the same subject matter as Plaintiff's patents and patent applications that he had shared with Nike in 2002"); *Brown v. Brown*, No. CV 13-03318 SI, 2013 WL 5947032, at *7 (N.D. Cal. Nov. 5, 2013) ("Because plaintiff's conversion claim is based on his contention that he was improperly omitted as an inventor on the sink utility patent application, plaintiff's conversion claim as pled is preempted."); *Gerawan*, 2012 WL 691758, at *7 (finding claims preempted that alleged "'[Rehrig] substantially interfered with Gerawan's rightful property by omitting Ray Gerawan as an inventor'" and as such, "'wrongfully exercised control over Gerawan's rights in ... the '293 Patent'"); *Gen. Elec. Co. v. Wilkins*, No. 1:10-CV-00674-OWW, 2011 WL 3163348, at *8-9 (E.D. Cal. July 26, 2011) (finding conversion claim preempted where the counter claimant alleged that the counter defendant wrongfully interfered with counter claimant's ownership interest as an inventor in certain patents); *Methode Elecs. Inc. v. Hewlett-Packard Co.*, No. C 99-04214 SBA, 2000 WL 1157933, at *3 (N.D. Cal. May 4, 2000) (finding conversion claims preempted because "[f]ederal patent law governs the disclosure of information at PTO proceedings"); *see also Hunter Douglas, Inc. v. Harmonic Design, Inc*., 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc*., 175 F.3d 1356, 1359 (Fed. Cir. 1999) ("If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law."). For example, in *Gerawan*, the plaintiff based its California state conversion claim on an allegation that the defendant "wrongfully exercised control over [the plaintiff's] interest in the [patent-at-

1    issue]" "by omitting [the plaintiff] as an inventor."  2012 WL 691758, at *7.  In dismissing this

2    claim, *Gerawan* explained that these allegations came down to an assertion of misappropriation

3    of patent rights via incorrect inventorship, which is preempted by federal patent law.  *Id.*

4         Plaintiff's conversion claim in this action mirrors the claim at issue in *Gerawan*.  A

5    conversion claim under California law requires three elements: (1) "'ownership or right to

6    possession of property;' (2) a defendant's wrongful act toward the property, causing interference

7    with the plaintiff's possession; and (3) damage to the plaintiff."  *See Tethys Bioscience, Inc. v.*

8    *Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, No. C09-5115 CW, 2010 WL 2287474, at

9    *7 (N.D. Cal. June 4, 2010) (outlining elements of conversion claim as stated in *PCO, Inc. v.*

10   *Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 394

11   (Cal. 2007)).  The properties at issue here are the UCSC applications and "the inventions in the

12   Genia Patents."  (Compl. ¶ 91.)  Plaintiff asserts ownership of these inventions because Mr.

13   Chen, "along with other University co-inventors," allegedly conceived of them while Chen was a

14   researcher at the University and agreed to assign all such inventions to the University.  (*Id.* ¶¶ 20,

15   91.)  In other words, Plaintiff asserts that Mr. Chen and various "other University co-inventors"

16   are the proper inventors of the UCSC Patent Applications and Genia Patents, resulting in the

17   University's ownership thereof, and that Defendants interfered with these rights.  Such a claim,

18   which is wholly "dependent on a determination of patent inventorship," is preempted by federal

19   patent law.  *See Gerawan*, 2012 WL 691758, at *7.

20        Under this same principle, Plaintiff's other claims are likewise preempted by federal

21   patent law.  As to Plaintiff's contract-based claims,[6] a contract claim under California state law

22   requires Plaintiff to allege facts establishing "(1) the existence of the contract, (2) plaintiff's

23

24   _____

25   [6] Plaintiff's breach of the implied covenant of fair dealing, based on the same facts, is duplicative
     of the breach of contract claim.  As a result, Defendants address Counts III and IV together.  *See*
26   *Zody v. Microsoft Corp.*, No. 12-CV-00942-YGR, 2012 WL 1747844, at *4 (N.D. Cal. May 16,
     2012) (explaining that claim for breach of the implied covenant relying on the same acts as a
27   contract claim in an employment context may be disregarded as duplicative (citing *Bionghi v.*
     *Metropolitan Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370 (Cal. Ct. App. 1999))).

28

1   performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting

2   damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011);

3   *Smith v. Visa U.S.A., Inc*., No. C 11-01634 SI, 2011 WL 2709819, at *2 (N.D. Cal. July 12,

4   2011) (same). The Complaint asserts that Mr. Chen's Oath imposed an "obligation to assign

5   inventions and patents that he conceived or developed during the time he was employed by

6   University or utilizing University's research facilities, resources, or funds." (Compl. ¶ 72.) The

7   Complaint further asserts that Mr. Chen breached this obligation by failing to execute

8   assignments regarding the UCSC Inventions as requested by the University, and using the UCSC

9   Inventions to obtain the Genia Patents. (*Id.* ¶ 78.) As these allegations make plain, there is no

10  breach unless Mr. Chen ***actually made*** the inventions at issue while he was at UCSC and with

11  the other alleged University co-inventors. In other words, a breach necessarily requires a finding

12  of inventorship. Plaintiff's ownership claim (Count II) is derivative of the other claims, as it

13  asserts ownership based on the same allegations of inventorship—that Mr. Chen conceived of the

14  UCSC Inventions at UCSC, that pursuant to the Oath Plaintiff owns the inventions, and that

15  Plaintiff is the true owner of the Genia Patents. (*Id.* ¶¶ 65-69.) Finally, Plaintiff's constructive

16  trust claim (Count VI) is a remedy, not a claim, and therefore falls with the other claims. *See*

17  *Optional Capital, Inc. v. Das Corp.*, 222 Cal. App. 4th 1388, 1402 (Cal. Ct. App. 2014)

18  (outlining elements for remedy of constructive trust); *Panaszewicz v. GMAC Mortg., LLC*, No. C

19  13-1162 MEJ, 2013 WL 3956355, at *6 (N.D. Cal. July 29, 2013) (same). Where these claims

20  all necessarily require a determination of inventorship, they are preempted by federal patent law

21  and must be dismissed for failure to assert a cognizable claim.

22      **C.    Plaintiff's Inventorship Claim Should Be Dismissed for Failure to Plead**
            **Factual Assertions Supporting the Basic Elements of the Claim (Count I)**

23          Plaintiff's claim for "correction" of inventorship under 35 U.S.C. § 256 fails as a matter

24  of law under the standard set out in *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678

25  (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

26

27

28

1    of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

2    (2007))).

3         Plaintiff seeks the unilateral removal of Mr. Randy Davis of Genia as an inventor and the

4    addition of UCSC faculty members Mark Akeson, David Deamer, and William Dunbar, and

5    former UCSC researcher Noah Wilson as co-inventors (Compl. ¶¶ 62-63), but fails to allege any

6    facts sufficient to support its claim.  To be a joint inventor, that individual "must generally

7    contribute to the conception of the invention."  *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d

8    1456, 1460 (Fed. Cir. 1998) (citing *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223,

9    1227-28 (Fed. Cir. 1994)).  In turn, "[c]onception is the 'formation in the mind of the inventor of

10   a definite and permanent idea of the complete and operative invention[.]'"  *Id.*  (citation omitted).

11   Inventorship is determined first by "constru[ing] each asserted claim to determine the subject

12   matter encompassed thereby," and then comparing "the alleged contributions of each asserted

13   co-inventor with the subject matter of the properly construed claim to then determine whether the

14   correct inventors were named."  *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed.

15   Cir. 2002).

16        The Complaint ignores these requirements, simply asserting without factual support that

17   Mr. Chen and the UCSC researchers are the "true" co-inventors on the Genia Patents.  (*See, e.g.*,

18   Compl. ¶¶ 45, 61, 62.)  Such conclusory allegations are exactly the type found by courts to be

19   insufficient to meet the pleading requirements under *Iqbal/Twombly*.  *See, e.g.*, *Intercept Pharm.,

20   Inc. v. Fiorucci*, No. 1:14-CV-1313-RGA, 2017 WL 253966, at *2 (D. Del. Jan. 20, 2017)

21   (dismissing inventorship claim where "Defendant's counterclaims are simply conclusory

22   statements amounting to a recitation of the legal requirements for patent inventorship and

23   ownership and are unsupported by any pleaded facts"); *Coda Dev. s.r.o. v. Goodyear Tire &

24   Rubber Co.*, No. 5:15-CV-1572, 2016 WL 5463058, at *5-6 (N.D. Ohio Sept. 29, 2016)

25   (dismissing claim where the plaintiff failed to allege "facts to support the assertions in claims

26   one and two that Hrabal is the true, sole inventor, nor are there any facts that he contributed in

27   any way, much less a novel way, to the patents in claims three through thirteen"); *Beco Dairy

28

1  *Automation, Inc. v. Glob. Tech Sys., Inc.*, No. 1:12-CV-01310 LJO, 2015 WL 925588, at *5

2  (E.D. Cal. Mar. 3, 2015) (dismissing inventorship claim where plaintiff "fail[ed] to provide a

3  factual basis from which this Court could reasonably infer that Lininger is a joint inventor for

4  any of the patents at issue").

5          Indeed, nowhere does the Complaint describe the claimed inventions of the Genia

6  Patents, explain how each of the UCSC researchers allegedly contributed to the conception of

7  those inventions, or allege any facts in support of its assertion that Randy Davis did ***not***

8  contribute to these inventions. Rather, the only factual allegations regarding inventorship are

9  that Dr. Akeson and Mr. Chen had "discussions" about an invention Mr. Chen disclosed to

10  UCSC (the written disclosure is not provided), and that Dr. Akeson "witnessed" an entry in a lab

11  notebook by Mr. Chen. (*Id.* ¶ 23.) These acts do not suggest any contribution to the conception

12  of the Genia Patents, and are therefore insufficient as matter of law to establish inventorship.

13  *E.g.*, *Ethicon*, 135 F.3d at 1460 ("One who simply provides the inventor with well-known

14  principles or explains the state of the art without ever having 'a firm and definite idea' of the

15  claimed combination as a whole does not qualify as a joint inventor.").

16      **D.**    **Plaintiff's Claims Fail as a Matter of Law to the Extent They Are Directed to**
           **Patent Applications**

17          Plaintiff seeks a determination on the inventorship, and therefore ownership, not only of

18  patents but also of patent applications. Plaintiff defines the "Genia Patents" as including U.S.

19  Serial No. 15/079,322; further, *all* of the "UCSC Inventions" are patent applications, not issued

20  patents. (*See* Compl. ¶¶ 28, 66.) But it is well established that a plaintiff cannot challenge

21  inventorship of a pending patent application in district court—it "is tantamount to a request for

22  either a modification of inventorship on pending patent applications or an interference

23  proceeding." *HIF Bio, Inc.*, 600 F.3d at 1353. Such a request is governed by 35 U.S.C. §§ 116

24  & 135(a), and therefore "can only be granted by the Director of the United States Patent and

25  Trademark Office." *Id.*; *see, e.g.*, *Kamdem-Ouaffo v. Pepsico, Inc.*, No. 14 CV 227 (KMK),

26  2015 WL 1011816, at *14 (S.D.N.Y. Mar. 9, 2015) (citing same in concluding that plaintiff

27

28

"cannot bring a cause of action for a correction of inventorship for the four pending patent applications"); *Picazio v. Melvin K. Silverman & Assocs., P.C.*, 965 F. Supp. 2d 1411, 1416 (S.D. Fla. 2013) (concluding that § 256 claim to correct inventorship could not be adjudicated because naming error occurred on patent application and no patent had issued); *Fin Brand Positioning, LLC v. Take 2 Dough Prods., Inc.*, 758 F. Supp. 2d 37, 41-42 (D.N.H. 2010) (same). Moreover, Plaintiff's claim for conversion cannot be based on a patent application, because a patent application is not a defined property interest. *Tethys*, 2010 WL 2287474, at *3 (dismissing conversion claim because "[a] patent, not a patent application, grants an individual exclusivity over the invention claimed" and "the application of the conversion tort to intangible property … should not be expanded to 'displace other, more suitable law"). Plaintiff's claims, to the extent directed to patent applications, should be dismissed without leave to amend.

### E.    Plaintiff's Contract Claims (Counts III and IV) Fail Where The Oath Imposes No Post-Employment Duty On Plaintiff

Plaintiff's claims for ownership (relying on the Oath signed by Mr. Chen), breach of contract, and breach of the implied covenant of good faith and fair dealing fail as a matter of law because the Oath unambiguously provides that Mr. Chen was not bound after leaving UCSC, and each of Mr. Chen's alleged breaches occurred after Mr. Chen left UCSC.

In construing the Oath, the Court may dismiss Plaintiff's contract claims at the pleadings stage where, as here, "the allegations in the complaint, viewed with other materials properly considered at the pleading stage, conclusively show that only the defendant's interpretation of the disputed contractual language is reasonable." *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 904 (N.D. Cal. 2016) (citing *Skilstaf Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012)). Under California law,[7] if the contract language is "'clear and explicit,' then it controls as a matter of law." *Diversified Capital Inv., Inc. v. Sprint Commc'ns, Inc.*, No. 15-CV-03796-HSG, 2016 WL 2988864, at *6 (N.D. Cal. May 24, 2016) (citing *Segal v. Silberstein*, 156 Cal.

---

[7] Defendants apply California law because Chen and the University were both located in California, and the Oath governed a California employment relationship.  (*See* Compl. ¶ 16.)

App. 4th 627, 633 (Cal. Ct. App. 2007)).  Contract language must be given its "plain and ordinary meaning . . . used by the parties," taking the contract together as a whole.  *Batts v. Bankers Life & Cas. Co.*, No. C 13-04394 SI, 2014 WL 296925, at *3 (N.D. Cal. Jan. 27, 2014) (quoting *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 132 (Cal. Ct. App. 2003)); *see also* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense.").

Applying these principles, the Oath unambiguously provides that Mr. Chen's duties end with his employment or use of University facilities or funds.  Specifically, the Oath outlines Mr. Chen's duty to assign inventions and patents, to promptly furnish the University with information regarding those inventions, and to execute documents and all things necessary to assign to the University all rights, title, and interest therein.  (Compl. Ex. A.)  The Oath then provides a time limit for these duties, stating that Mr. Chen is bound only during his employment: "I acknowledge that I am bound ***during any periods of employment by University or for any period during which I conceive or develop any invention during the course of my utilization of any University research facilities, or any gift grant, or contract research funds*** received through the University."  (*Id.* (emphasis added).)  Thus, based on the Oath's plain terms, Mr. Chen is *not* bound during periods where he is not employed or where he does not use University resources in conceiving or developing an invention.  In other words, read in context with the Oath as a whole, Mr. Chen's duties under the Oath—*i.e.*, to assign inventions, to furnish information, and to execute documents—begin and end with his employment at the University or during periods where he uses University resources in conceiving or developing an invention.

All of Mr. Chen's alleged breaches of the Oath occurred ***after*** he left UCSC—the Complaint asserts that after Mr. Chen left UCSC, he failed to execute assignments and declarations, failed to assign his rights in the UCSC inventions to the University, and pursued the Genia Patents.  (Compl. ¶¶ 78, 87.)  Because Mr. Chen was no longer bound by the Oath at this time, these acts do not constitute a breach.  The alternative, to impose an ongoing duty on a former employee, would not only contradict the plain terms of the Oath but result in the absurd

result that Plaintiff seeks in this case—that years after leaving, a former employee may be forced to assign inventions to the University which the former employee does not believe belong to the University.  If the University wanted to impose an ongoing duty on employees to assist in solidifying patent rights post-termination, it could have easily included such language.  But where the Oath clearly limits Mr. Chen's duties, Plaintiff cannot assert a breach of contract based on alleged post-employment duties.

### F.    Count I, to the Extent Directed to a Patent Application, and Counts II-VI in their Entirety, Should Be Dismissed Without Leave to Amend

As described above, as a matter of law, Plaintiff cannot assert claims seeking to change inventorship of a patent application, and Counts II-VI of the Complaint are time-barred and preempted by federal law.  Because there are no facts that Plaintiff could allege to save these claims, Defendants request that these claims be dismissed without leave to amend.  *See Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2012) (a court may grant dismissal without leave to amend where it is clear that the complaint cannot be saved by amendment); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Counts I through VI of Plaintiff's Complaint, and such dismissal should be with prejudice as to Count I, to the extent directed to U.S. Provisional Patent Application Serial No. 15/079,322, and Counts II-VI in their entirety.

1

Dated:  February 27, 2017.

2

**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**

3

4

*/s/* Robert J. Gunther, Jr.

Robert J. Gunther, Jr. (NY SBN: 1967652)
robert.gunther@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7518
Facsimile: (212) 230-8888

5

6

7

8

*Counsel for Defendants Roger Jinteh Arrigo*
*Chen and Genia Technologies, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2      The undersigned hereby certifies that a true and correct copy of the above and foregoing

3  document has been served on February 27, 2017, to all counsel of record who are deemed to

4  have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.5.

5  Any other counsel of record will be served by electronic mail, facsimile, and/or overnight

6  delivery.

7                                      */s/ Robert J. Gunther, Jr.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX A

# APPENDIX A: TIMELINE OF EVENTS LEADING UP TO CRITICAL DATES, BASED ON ALLEGATIONS OF COMPLAINT AND FACTS SUBJECT TO JUDICIAL NOTICE

Timeline spanning 2005–2013:

**DEC 29**
Critical Date for Statute of Limitations for Plaintiff's Tort-Based Claims

**OCT 17**
Plaintiff files patent application 14/056,636 naming Mr. Chen as a co-inventor
*(Compl. ¶ 28)*

**SEP 15**
Mr. Chen signs Oath
*(Compl. Ex. A)*

**JAN**
Mr. Chen leaves UCSC
*(Compl. ¶ 15)*

**AUG 11**
Genia's patent application 12/658,604 publishes
*(RJN Ex. A)*

**JUN 11**
Genia's patent application 13/620,973 issues as U.S. Patent No. 8,461,854
*(Compl. ¶ 52, RJN Ex. B)*

**OCT**
Mr. Chen begins work as a researcher at UCSC
*(Compl. ¶¶ 2, 16)*

**APR 4**
Plaintiff files two patent applications, listing Mr. Chen as co-inventor
*(Compl. ¶ 28)*

**MAY 13**
Genia files patent application 13/893,142, naming Mr. Chen and Randy Davis as inventors
*(Compl. ¶ 52, RJN Ex. C)*

**APR 6**
From April 6, 2008 to Sept. 7, 2008, Plaintiff allows three of its patent applications listing Mr. Chen as co-inventor to expire
*(RJN Exs. F, G, H)*

**JAN 17**
Genia's patent application 13/620,973 publishes *(RJN Ex. B)*

Timeline axis: **2005  2006  2007  2008  2009  2010  2011  2012  2013**

**FEB 8**
Genia files patent application 12/658,604, naming Mr. Chen and Randy Davis as inventors
*(Compl. ¶ 52, RJN Ex. A)*

**DEC 29**
Critical Date for Statute of Limitations for Plaintiff's Contract-Based Claims

**APR 4**
From April 4, 2007 through Sept. 4, 2007, Plaintiff files three patent applications, listing Mr. Chen as either an inventor or co-inventor
*(Compl. ¶ 28)*

**DEC 4**
Genia's patent application 12/658,604 issues as U.S. Patent No. 8,324,914
*(Compl. ¶ 52, RJN Ex. A)*

**MAR**
Genia is founded
*(Compl. ¶ 39)*

**OCT 13**
Plaintiff abandons remaining U.S. patent application listing Mr. Chen as a co-inventor
*(RJN Ex. I)*

**APR**
From April 2006 through May 2007, Mr. Chen conceives and discloses various inventions to UCSC
*(Compl. ¶¶ 20-26)*

**2009**
In "early 2009" through 2010, Plaintiff asks Mr. Chen to execute declarations regarding the University's patent applications; Chen fails to do so
*(Compl. ¶¶ 36-37)*

**SEP 15**
Genia files patent application 13/620,973, naming Mr. Chen and Randy Davis as inventors
*(Compl. ¶ 52; RJN Ex. B)*

# APPENDIX B

## APPENDIX B: THE GENIA PATENTS ALL STEM FROM THE SAME APPLICATION

